**WHEELING–PITTSBURGH STEEL CORPORATION, Plaintiff,**

v.

**MITSUI & COMPANY,
et al., Defendants.**

No. C2–98–1122.

United States District Court,
S.D. Ohio,
Eastern Division.

Nov. 16, 1998.

---

Edward Anthony Matto, Bricker & Eckler, Columbus, OH, for plaintiff.

Kenneth G. Weigel, James P. Gillespie, Christopher Landau, Paul F. Brinkman, Kirkland & Ellis, Washington, DC, for Defendant Mitsui & Co.

William Silverman, Kenneth A. Gallo, Richard P. Ferrin, Rogers & Wells, Washington, DC, for defendant Marubeni American Corp.

Gary N. Horlick, Matthew Olstead, O'Melveny & Myers, Washington, DC, for Defendant Tradearbed, Inc.

Christopher M. Curran, Walter J. Spak, J. Christian Word, White & Case, Washington, DC, for Defendants Duferco Steel Inc. and Duferco US Holding Corp.

H. Stephen Harris, Jr., M. Russell Wofford, Jr., Philip R. Stein, Alston & Bird, Washington, DC, for Defendant Itochu Intern. Inc.

Margaret K. Pfeifferf, Richard H. Sauer, Joseph J. Matelis, Michael M. Maney, Elizabeth M. Zito, Sullivan & Cromwell, Washington, DC, for Defendant Nippon Steel Corp.

Danny L. Cvetanovich, Robert C. Tucker, Hugh M. Stanley, Jr., Arter & Hadden, Columbus, OH, Theodore Whitehouse, David P. Murray, Willkie, Farr & Gallagher, Washington, DC, for Defendant NKK Corp..

Neil R. Ellis, Allen S. Rugg, Stephen R. Smith, Powell, Goldstein, Frazer & Murphy, Washington, DC, for Defendant JSC Severstal.

J. Kevin Cogan, Fredrick Sherman, Jones, Day, Reavis & Pogue, Washington, DC, for Defendant Titan Indus. Corp.

Randall L. Sarosdy, Warren E. Connelly, Beth L. Hirschfelder, Akin, Gump, Strauss, Hauer & Feld, Washington, DC, for Defendants Magnitorgorskiy Kombinat & Novolipetsk Met Kombinat.

## OPINION AND ORDER

SARGUS, District Judge.

This matter is before the Court for consideration of the Plaintiff's Motion to Remand.

(Doc. 3) The Motion urges this Court to find that the issues raised in the Complaint of Wheeling–Pittsburgh Steel Corporation are matters involving only state, rather than federal, claims and that the case was improperly removed by the defendants from state to federal court.

For the reasons that follow, the Motion of the plaintiff is DENIED.

## I.

### SUMMARY OF DECISION

The Wheeling–Pittsburgh Steel Corporation seeks relief against alleged unlawful dumping. Dumping is the selling of a product below either (a) the cost of production and delivery; or (b) the price for which a foreign product is sold in its own domestic market. Dumping almost always occurs through the use of government subsidies and is widely condemned as an unfair trade practice which disrupts fair methods of international trade. *See generally* 19 U.S.C. § 1673; Note, *Rethinking the 1916 Antidumping Act,* 110 Harv.L.R. 1555 (1997).

The plaintiff asserts in its Complaint that the defendants, which are Japanese and Russian steel manufacturers, are seeking to destroy the domestic United States steel industry. The plaintiff seeks a variety of relief, including an injunction barring, on a temporary basis, the importation of *all* hot-rolled steel imported from the nations of Japan and Russia offered for sale below the cost of production. Although the claims made by the plaintiff are couched in terms of state law, the claims of the plaintiff set forth the essential harm for which Congress has enacted a specific remedy, *i.e.,* the Antidumping Act, 15 U.S.C. § 72.

Under the United States Constitution, only Congress and the President may regulate international trade. Congress has enacted both the Antidumping Act as well as the Trade Act of 1930, as amended, 19 U.S.C. § 1673, *et. seq.* The Antidumping Act permits any party injured by international

dumping to bring a lawsuit in federal court and recover triple the amount of the damages suffered, together with attorney's fees. 15 U.S.C. § 72. The Trade Act permits the United States International Trade Commission, upon a finding of dumping, to file a complaint on behalf of an entire industry. Based upon a finding of dumping, the United States Commerce Department is authorized to increase the tariff charged on any unlawfully dumped foreign goods in an amount which would raise the cost of the imported product to the fair market price.

Whether those remedies are adequate to address the potential harm of dumping is a matter for Congress, and not this Court, to consider. What is clear, however, is that under the Constitution the whole arena of international trade is a matter subject only to federal regulation. The claims made by the plaintiff arise under exclusive federal jurisdiction.

Both the plaintiff and the defendants agree that this Court is without authority to hold a hearing on the temporary restraining order sought by the plaintiff under only state law. The plaintiff may move for leave to amend its Complaint by November 20, 1998 to allege violations of federal law.

The Court takes judicial notice [1] of the fact that on November 13, 1998, the United States International Trade Commission found that low-priced hot-rolled steel imported from Japan and Russia has caused significant economic damage to the domestic steel industry.[2] Because of the harm posed by unlawful dumping, should plaintiff amend its Complaint, the federal claims will be heard on an expedited basis under the supervisory authority of this Court.

## II.

On October 27, 1998, plaintiff commenced this action by the filing of a Complaint in the Court of Common Pleas in Belmont County, Ohio. Thereafter, on November 6, 1998, all defendants filed a Notice of Removal, remov-

---

**1.** Fed.Evid.R. 201(b)(2).

**2.** International Trade Commission, *Certain Hot-Rolled Steel Products from Brazil, Japan and Rus-*

*sia,* Investigation Nos. 701–A–384 and 731–TA–806, 808.

ing this action in its entirety from the Court of Common Pleas to the Federal District Court. Defendants claim that this Court has original jurisdiction under 28 U.S.C. § 1331 which vests this Court with the authority to hear cases "arising under the Constitution, laws, or treaties of the United States."

On November 9, 1998, the plaintiff filed a Motion to Remand (Doc. 3) in which it asserts that this Court lacks subject matter jurisdiction over the matters now pending before it. The plaintiff asserts the matters set forth in its Complaint do not arise under any provision of the United States Constitution, federal statute, or treaty. If such assertion is correct, this Court lacks subject matter jurisdiction and the matter must be remanded to the Belmont County Court of Common Pleas.

The Court has reviewed all of the pleadings and the parties' briefs on the issue of removal and remand. For the reasons that follow, plaintiff's Motion to Remand this case to the Court of Common Pleas is DENIED.

### III.

The jurisdiction of the Federal Courts is described in Article III, Section 2 of the Constitution to "extend to all Cases, in Law and Equity, arising under this Constitution the Laws of the United States, and Treaties made ..." U.S. CONST., art. III, § 2, cl. 1. The sole basis upon which the defendants have removed this case to the District Court is their claim that the issues raised in the Complaint arise under the Constitution, laws or treaties of the United States.

The parties do not dispute that the Complaint filed in state court purports to be based solely upon claims arising under state law. Count I of the Complaint alleges unfair competition and makes no specific reference to federal law. Count II of the Complaint alleges that the defendants have tortiously interfered with the business relationships of the plaintiff by selling hot-rolled steel below the cost of production and delivery. Again, no reference is made to federal law in Count II of the Complaint.

■ It is the general rule that a plaintiff may elect to base his or her complaint upon state law and prevent removal to federal court under what is termed the "well-pleaded complaint rule." *Caterpillar v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Under this principle, a plaintiff may elect to assert valid state claims while foregoing any possible federal claims and thereby defeat the federal question jurisdiction of the United States District Court.

■ A well-established exception to the well-pleaded complaint rule occurs when federal law has created "complete preemption." *Warner v. Ford Motor Co.,* 46 F.3d 531, 533–34 (6th Cir.1995). Under Article VI of the Constitution, the Constitution and laws of the United States, and treaties are deemed to be "the supreme law of the land." U.S. CONST., art. VI, ¶ 2. Consequently, if a plaintiff seeks to assert only a state law claim in an area in which the Federal Constitution, laws or treaties have preempted the field, the well-pleaded complaint rule must give way to the supremacy of federal law. The question before the Court, therefore, is whether the Complaint raises matters within the exclusive jurisdiction of federal law or treaty.

### IV.

Defendants contend that the plaintiff seeks relief from a state court in direct contravention of specific Constitutional provisions delegating the regulation of all international trade to the federal government. Plaintiff has alleged in the Complaint that all of the defendants manufacture and export hot-rolled steel in either Japan or Russia (Complaint, ¶ 25). The Complaint further sets forth an allegation that the defendants are "attempting to shift the financial impact of their depressed economies" by selling hot-rolled steel at a price below the cost of production and delivery. (Complaint, ¶ 28) Further, the Complaint avers that the alleged conduct of the defendants "... if unchecked would have the effect of forcing a domestic competitor from the marketplace, and would mark the increased reliance of Ohioans on foreign produced steel that is subject to the whims of foreign economies and regulation of foreign governments." (Complaint, ¶ 31)

The primary relief sought by the plaintiff is set forth in Paragraphs (a) and (e) in the Request for Relief. In its first request for relief, plaintiff seeks the following remedy:

> For Counts I and II, an immediate order with temporary restraint that directs Defendants to refrain from the shipment, sale, importation, delivery, transfer, or other commercial exchange of "hot-rolled" steel manufactured in Russia or Japan to customers located in Ohio.

(Complaint, Request for Relief, ¶ (a).)

Plaintiff also seeks in Paragraph (e) of its requested relief:

> For Counts I and II, an order with temporary restraint and preliminary injunction, immediately cease the shipment, sale, importation, delivery, transfer or other commercial exchange, by any means whatsoever, of "hot-rolled" steel manufactured in Russia or Japan and destined for resale or delivery within the State of Ohio or to customers located in Ohio below Defendant Manufacturer's cost of production and delivery ...

(Complaint, Request for Relief, ¶ (e).)

The defendants contend that the plaintiff is essentially seeking an embargo. Defendants point out that the preliminary relief requested in the Complaint seeks a complete prohibition on the shipment, importation or delivery of hot-rolled steel manufactured in Russia or Japan. Defendants assert that such relief may not be imposed by a single state or a court acting under state authority. Further, defendants assert that the authority to regulate international trade is vested solely in the Executive Branch of the United States government.

■ It is beyond dispute that the authority to regulate international trade is vested exclusively with the federal government under the express terms of the United States Constitution. Article I, § 8 provides that "The Congress shall have power ... To regulate Commerce with foreign Nations ..." U.S. CONST., art. I, § 8, cl. 3. Further, the Constitution expressly provides that, "No state shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports ..." U.S. CONST., art. I, § 10, cl. 2.

While the Constitution established a federalist system allocating certain powers to the national government and reserving other powers to the states, the courts have uniformly recognized that the regulation of international trade is a power vested solely with the federal government. Indeed, the very Framers of the Constitution urged upon the citizens of the United States a new form of government in which the central government would retain exclusive jurisdiction in matters of international trade and foreign relations. In *The Federalist* papers, Alexander Hamilton decried the weakness of the Articles of Confederation and urged adoption of the United States Constitution in part because the former form of government did not provide for uniform, national regulation of interstate trade and commerce. Hamilton wrote:

> The treaties of the United States, under the present Constitution [Articles of Confederation], are liable to the infractions of thirteen different legislatures, and as many different courts of final jurisdiction, acting under the authority of those legislatures. The faith, the reputation, the peace of the whole Union, are thus continually at the mercy of ... every member of which it is composed.

*The Federalist No. 22* (Alexander Hamilton, December 14, 1787).

In the early Republic, the Supreme Court reaffirmed the preeminent rule of the national government with respect to the regulation of international trades. In *Brown v. Maryland*, 25 U.S. (12 Wheat.) 419, 6 L.Ed. 678 (1827), the Supreme Court, speaking through Chief Justice Marshall, struck down a Maryland law which required importers to obtain a license to sell imported goods. The Supreme Court noted that the various states were without power to ban the sales or importation or foreign goods into a single state's jurisdiction. *Id.* at 447.

In *Buttfield v. Stranahan*, the Supreme Court held:

> The power to regulate commerce with foreign nations is expressly conferred upon Congress, and, being an enumerated pow-

er, is complete in itself, acknowledging no limitations other than those prescribed in the Constitution.... Whatever difference of opinion, if any, may have existed or does exist concerning the limitations of the power, resulting from other provisions of the Constitution, so far as interstate commerce is concerned, it is not to be doubted that from the beginning Congress has exercised a plenary power in respect to the exclusion of merchandise brought from foreign countries ...

192 U.S. 470, 492, 24 S.Ct. 349, 48 L.Ed. 525 (1904) (citations omitted).

In *Japan Line, Ltd. v. County of Los Angeles,* the Supreme Court again held that foreign commerce is preeminently a matter of national concern. 441 U.S. 434, 448, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979). The Court noted that the Constitution itself vested in the national government the authority to regulate international trade and to act through a single government with unified national authority. *Id.* at 444, 99 S.Ct. 1813.

Relying on the powers set forth in Article I, Section 8 of the Constitution, Congress has enacted a series of statutes regulating international trade which are implicated in the matters set forth in plaintiff's Complaint. While the Complaint alleges that the defendants have sold hot-rolled steel below the cost of production and delivery (Complaint, ¶ 27), the laws of the United States prohibit such alleged conduct. In 1916, Congress enacted an antidumping statute which to this day prohibits the importation of foreign product at a price substantially less than the actual market value in the principal markets of the country of their production. The statute, known as the Antidumping Act, states in its entirety:

It shall be unlawful for any person importing or assisting in importing any articles from any foreign country into the United States, commonly and systematically to import, sell or cause to be imported or sold such articles within the United States at a price substantially less than the actual market value or wholesale price of such articles, at the time of exportation to the United States, in the principal markets of the country of their production, or of other foreign countries to which they are commonly exported after adding to such market value or wholesale price, freight, duty, and other charges and expenses necessarily incident to the importation and sale thereof in the United States: *Provided,* That such act or acts be done with the intent of destroying or injuring an industry in the United States, or of restraining or monopolizing any part of trade and commerce in such articles in the United States.

Any person who violates or combines or conspires with any other person to violate this section is guilty of a misdemeanor, and, on conviction thereof, shall be punished by a fine not exceeding $5,000, or imprisonment not exceeding one year, or both, in the discretion of the court.

*Any person injured in his business or property by reason of any violation of, or combination or conspiracy to violate, this section, may sue therefor in the district court of the United States for the district in which the defendant resides or is found or has an agent,* without respect to the amount in controversy, and shall recover threefold the damages sustained, and the cost of the suit, including a reasonable attorney's fee.

The foregoing provisions shall not be construed to deprive the proper State courts of jurisdiction in actions for damages thereunder.

15 U.S.C. § 72 (emphasis added).[3]

In addition to providing for a specific federal remedy for parties injured by antidump-

---

**3.** The last sentence of the statute provides for concurrent state court jurisdiction. Such provision does not, however, permit the various states to provide additional legal claims or remedies. As noted in *Pacamor Bearings, Inc. v. Minebea Co.,* 892 F.Supp. 347, 355–56 (D.N.H.1995), the plaintiff pleaded claims under the 1916 Antidumping Act, 15 U.S.C. § 72, as well as state claims for unfair competition, unjust enrichment and tortious interference with contract. The District Court held that such claims were preempted by federal law to the extent such claims were based on allegations of international price discrimination or violations of the 1916 Antidumping Act. *Id.* Further, while state courts may have concurrent jurisdiction over claims arising under 15 U.S.C. § 72, such claims remain exclusively

ing practices, Congress also has enacted the Tariff Act of 1930, as amended, 19 U.S.C. § 1301–1673. These statutes require the United States Department of Commerce and the United States International Trade Commission ("ITC") to investigate alleged dumping practices involving foreign goods. The statutes create an administrative procedure whereby an American manufacturer may file a complaint alleging unlawful dumping by a foreign manufacturer. The ITC thereupon determines whether there is a reasonable indication that the domestic injury is threatened with harm. 19 U.S.C. § 1673b(a)(1). If the ITC makes such a preliminary determination, the Department of Commerce then conducts a comprehensive inquiry into the foreign manufacturers practices. Ultimately, if the ITC determines that dumping has occurred and that an industry in the United States is materially injured or threatened with material injury, then an antidumping duty shall be imposed. The duty shall be equal to an amount by which the normal value of the imported items exceeds the export price for the merchandise. 19 U.S.C. § 1673.

Congress has enacted a complex administrative process whereby complaints of dumping shall be made before the ITC and the Department of Commerce. *See generally* 19 U.S.C. § 1673b; 1673d. Any party aggrieved by a decision resulting from this administrative process may appeal to the Court of International Trade. Further, appeals from the Court of International Trade are heard before the United States Court of Appeals for the Federal Circuit. 19 U.S.C. § 1516a; 28 U.S.C. § 1581.

In summary, the United States Constitution itself prohibits any state regulation of international trade. Further, Congress has enacted comprehensive statutes prohibiting dumping practices by international manufacturers. The first such statute, the 1916 Antidumping Act, provides damages to an injured party for the same type of harm as alleged in plaintiff's Complaint.[4] Further, Congress has provided a complex and exclusive admin-

istrative scheme whereby parties may charge foreign manufacturers with unlawful dumping and, if such charges are established, tariffs may be imposed upon the imported goods to eliminate any advantage otherwise resulting from unlawful dumping.

## V.

■ In light of the foregoing, it is clear that plaintiff's Complaint, while couched solely in terms of state law, raises issues which are completely preempted by federal law. The Complaint is brought against Russian and Japanese steel manufacturers. The plaintiff alleges that the defendants' conduct would increase reliance upon foreign produced steel "subject to the whims of foreign economies and regulations of foreign governments." (Complaint, ¶ 31) Further, plaintiff seeks a Temporary Restraining Order preventing defendants from importing any hotrolled steel manufactured in Russia or Japan. These matters lie squarely in the federal field occupied by comprehensive Congressional statutory and executive administrative schemes, and the Constitution itself.

Plaintiff cannot overcome the fact that a state has no power to enact any barrier to foreign commerce. Such matters are in the exclusive domain of federal law. Consequently, the Court finds that the plaintiff may not avail itself of the well-pleaded complaint rule insofar as the field of foreign trade is subject to total and complete federal preemption.

For these reasons, the Motion to Remand (Doc. 3) is **DENIED.**

## VI.

The defendants have also filed a Motion to Dismiss or, alternatively, to cancel the hearing established by the Court with respect to the plaintiff's Motion for a Temporary Restraining Order. The defendants correctly point out that once this Court determines that it has subject matter jurisdiction, plaintiff's current claims must, as a matter of law,

---

federal and are therefore removable to this Court under 28 U.S.C. § 1331.

**4.** Whether 15 U.S.C. § 72 affords injunctive relief to an injured party is not a matter before this Court.

fail. Both the claims set forth in the Complaint presently sound in state law. This Court has held that such claims, which are manifestly of federal character, simply cannot be made under state law.

At the same time, however, having assumed jurisdiction over this case, this Court may also consider whether plaintiff should be given leave to amend its Complaint. Under Federal Rule of Civil Procedure 15(a), the plaintiff may amend its complaint before a responsive pleading is served, which has yet to occur. Further, additional amendments to the complaint may be made by leave of Court. The rule explicitly requires that the Court grant permission to amend the complaint when justice so requires. Fed. R.Civ.P. 15(a).

It is apparent from the face of the Complaint that the conduct complained of by the plaintiff is similar, if not identical, to the conduct prohibited in 15 U.S.C. § 72. Such statute provides for a specific legal remedy and vests jurisdiction in the District Courts of the United States. Because the Court is not convinced that the factual allegations set forth in the Complaint fail to support a valid cause of action under 15 U.S.C. § 72, the defendants' Motion to Dismiss will be provisionally denied. In turn, the plaintiff may move for leave to amend its Complaint on or before November 20, 1998.

**IT IS SO ORDERED.**