Mary Elizabeth HAGGERTY, by her mother and natural guardian Geraldine HAGGERTY, Plaintiffs,

v.

WYETH AYERST PHARMACEUTICALS, A Division of American Home Products Corporation, Merck & Co., Inc., and Edward Reilly, M.D., Defendants.

No. 99–CV–6713 (ILG).

United States District Court, E.D. New York.

Jan. 4, 2000.

Christopher Brennan, Smith Buss & Jacobs, New York City, for Mary Elizabeth Haggerty.

John G. Luboja, Luboja & Thau, New York City, Paul F. Strain, Dino Santo Sangiamo, Venable, Baetjer and Howard, LLP, Baltimore, MD, Daniel J. Thomasch, Orrick, Herrington & Sutcliffe LLP, New York City, for Wyeth Ayerst Pharmaceuticals, Merck & Co., Inc.

## MEMORANDUM & ORDER

GLASSER, District Judge.

Plaintiffs, Mary Haggerty and her mother (collectively, "the Haggertys"), instituted this action against defendants Wyeth Ayerst Pharmaceuticals (a division of American Home Products Corp.) (hereinafter, "Wyeth"), Merck & Co., Inc. ("Merck"), and Edward Reilly, M.D., in the Supreme Court for the State of New York, Kings County, on September 8, 1999, asserting various claims for personal injuries allegedly arising from defendants' actions in manufacturing, distributing, and administering certain vaccines. On October 19, 1999, defendant Merck, joined by Dr. Reilly,[1] timely filed notice removing the action to this Court pursuant to 28 U.S.C. § 1446, alleging federal question jurisdiction under the National Childhood Vaccine Injury Act ("the Vaccine Act," or "the Act"), 42 U.S.C. §§ 300aa–1–300aa–34.[2] Plaintiffs now move for an order remanding the case to the state court, as well as for costs and attorneys' fees pursuant to 28 U.S.C. § 1447(c). For the reasons stated below, plaintiffs' motion to remand is granted, and plaintiffs' motion for costs and attorneys' fees is denied.

## BACKGROUND

The facts here recited are gleaned from the allegations of the Complaint in the

William P. Brady, Martin Clearwater & Bell, New York City for Edward Reilly.

1. Defendant Wyeth has filed a notice to all parties consenting to removal, but has otherwise taken no position on plaintiffs' motion to remand.

2. A "notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading...." 28 U.S.C. § 1446(b).

underlying state action, as well as from a decision of the United States Court of Appeals for the Federal Circuit in a related case. _See Haggerty v. Sec'y of Health and Human Services,_ 178 F.3d 1312, 1998 WL 904734 (Fed.Cir.1998).[3] On May 7, 1993, Mary Haggerty, a normal, healthy child of 18 months at the time, was administered one or more routine vaccine injections in the office of defendant Dr. Reilly. Later that day, she suffered a seizure and was hospitalized. It subsequently emerged that the child had suffered an encephalopathy within hours of the vaccination. Mary remains severely impaired, and suffers from residual seizure disorder.

On April 21, 1995, plaintiffs petitioned the Court of Federal Claims to recover damages under the Vaccine Act. The Act establishes a scheme of recovery for injuries and deaths traceable to vaccinations, which is designed to work faster and with greater ease than the civil tort system. _Shalala v. Whitecotton,_ 514 U.S. 268, 269, 115 S.Ct. 1477, 131 L.Ed.2d 374 (1995). As described by the Court in _Whitecotton,_ the scheme provides that claims are heard in the first instance by special masters, adjudicated informally, and then accorded expeditious review. _Id._ at 270, 115 S.Ct. 1477. The Act achieves its objective of streamlining the claims process in large part by the establishment of standards of proof, under which patients who are administered a vaccine, and who suffer injuries within specified intervals after, have the benefit of a presumption that their symptoms were caused by the vaccine. 42 U.S.C. §§ 300aa–11(c)(1)(C)(i); 300aa–13(a)(1); 300aa–14.

Of significance for this case, the Act also provides that no person

may bring a civil action for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer _in a State or Federal court_ for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after the effective date of this subpart [October 1, 1988], and no such court may award damages in an amount greater than $1,000 in a civil action for damages for such a vaccine-related injury or death, unless a petition has been filed in accordance with section 300aa–16 of this title, for compensation under the [National Vaccine Injury Compensation] Program for such injury or death and (i)(I) the United States Claims Court has issued a judgment under section 300aa–12 of this title on such petition, and (II) such person elects under section 300aa–21(a) of this title to file such an action, or (ii) such person elects to withdraw such petition under section 300aa–21(b) of this title or such petition is considered withdrawn under such section.

42 U.S.C. § 300aa–11(2)(A) (emphasis supplied).

The Haggertys filed a petition for compensation under the National Vaccine Injury Compensation Program. In accordance with the provisions of the Act, their petition was referred to a special master, who reviewed the documentary evidence submitted and held an evidentiary hearing. On March 4, 1997, the special master denied the petition, finding that the timing of Mary's injury did not qualify her for the statutory presumption of causation. _Haggerty v. Sec'y of Health and Human Services,_ No. 98–5049, 1998 WL 904734, at *1 (Fed.Cir. Dec. 29, 1998). On November

---

**3.** The procedural posture of that case, and its relation to the state action, will be addressed in detail below. It should be noted that the Court's _per curiam_ opinion was designated as "nonprecedential" pursuant to Local Rule 47.6(b) of the United States Court of Appeals for the Federal Circuit, which provides as follows: "An opinion or order which is designated as not to be cited as precedent is one unanimously determined by the panel issuing it as not adding significantly to the body of law. Any opinion or order so designated must not be employed or cited as precedent. This rule does not preclude assertion of claim preclusion, issue preclusion, judicial estoppel, law of the case, or the like based on a decision of the court designated as nonprecedential."

14, 1997, the Court of Federal Claims affirmed, and by its unpublished decision of December 29, 1998, the Court of Appeals for the Federal Circuit affirmed again. In September of this year, by their filing in Kings County Supreme Court, the Haggertys exercised their right under the above-cited provisions of the Act to pursue their claims by a civil action for damages in state court.

## DISCUSSION

A state court action may be removed to federal court "if it qualifies as a 'action ... of which the district courts of the United States have original jurisdiction,' unless Congress expressly provides otherwise." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 118 S.Ct. 921, 925, 139 L.Ed.2d 912 (1998) (quoting 28 U.S.C. § 1441(a)). Defendants Merck and Reilly invoke this Court's original federal question jurisdiction over "[a]ny civil action ... founded on a claim or right arising under the Constitution, treaties or laws of the United States" in support of their petition of removal. 28 U.S.C. § 1441(b); *see also* 28 U.S.C. § 1331.

■ Under long-standing Supreme Court precedents, the analysis of whether a claim "arises under" federal law is determined by the " 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet*, 118 S.Ct. at 925 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). A defense

that raises a federal question is inadequate to confer federal jurisdiction. *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). Thus, "a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

■ An "independent corollary" to the well-pleaded complaint rule, *id.* at 22, 103 S.Ct. 2841, "is the further principle that a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Rivet*, 118 S.Ct. at 925 (internal quotations omitted). As the Court explains in *Rivet*,

> [i]f a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint. The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim.

*Id.* The "artful pleading" corollary follows from the basic tenets of preemption doctrine. "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state-law claim is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393, 107 S.Ct. 2425.[4]

---

4. The "defense of preemption" referred to in *Franchine Tax Bd.* and the "complete preemption" that is the focus of the "artful pleading" rule must be distinguished. Claims that are "so 'necessarily federal' that they always will permit removal to federal court, even if they are raised only by way of defense" are said to be "completely" preempted. 14B Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 3d § 3722.1 at 509–11 (1998). In such cases, federal law "not only preempts a state law to some degree but also substitutes a federal

cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal." *Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir.1996). The result is that removal is proper where state claims are completely preempted, because the effect of the federal legislation is to transform those claims into federal causes of action. By contrast, "[o]rdinary preemption will not ... permit removal jurisdiction if the plaintiff chooses to frame his claim based solely on state law." 14B Wright, Miller & Cooper, Federal

In support of its petition for removal, defendant Merck argues that plaintiffs' cause of action was created and wholly authorized by Congress, notwithstanding the applicability in part of state law to the resolution of their claims. Merck also argues that removal lies because plaintiffs' claims involve the construction of substantial questions of federal law. Finally, Merck contends that those claims are "completely preempted" under the Vaccine Act. Plaintiffs reject these arguments, insisting that the plain terms of the Vaccine Act, and the case law interpreting its provisions, indicate that Congress did not intend to vest the federal judiciary with original jurisdiction over civil actions arising out of vaccine-related injuries. Plaintiffs also argue that it is equally clear by the same reasoning that Congress did not intend to preempt state court actions brought after the procedures of the Vaccine Act have been exhausted.

■ Plaintiffs are correct to rebuff defendant Merck's arguments by reference to the clear and unambiguous language of the Act. As set forth above, the key provision is 42 U.S.C. § 300aa–11(a)(2), which states, in substance, that a civil action for damages arising out of vaccine-related injuries or death may be brought "in a State or Federal court" only after the claimant exhausts his or her administrative remedies under the Vaccine Act. 42 U.S.C. § 300aa–11(a)(2)(A). *See Whitecotton,* 514 U.S. at 270, 115 S.Ct. 1477 (summarizing the Act's provisions and observing that "[a] claimant alleging that more than $1,000 in damages resulted from a vaccination after the Act's effective date in 1988 must exhaust the Act's procedures and refuse to accept the resulting judgment before *filing any de novo civil action in*

*state or federal court"*) (emphasis supplied). Presumably, it is because Merck is unable to explain the import for its argument of the Act's reference to both the state and the federal forums that it never addressed this language in its papers.

In fact, the provision in question is the first premise of the argument that forecloses Merck's opposition to plaintiffs' motion. The argument follows from the settled principles of removal case law already set forth. If, as cannot be disputed, a civil action for damages for vaccine-related injuries may originate in either state or federal court, then only two grounds will sustain federal question jurisdiction in such a case: either (i) the Vaccine Act created the cause of action; or (ii) the adjudication of rights in a civil action arising out of vaccine-related injuries necessarily turns on some construction of federal law, or involves some substantial, disputed question of federal law as a necessary element. *See Merrell Dow,* 478 U.S. at 808, 106 S.Ct. 3229 ("[T]he vast majority of cases brought under the general federal question jurisdiction of the federal courts are those in which federal law creates the cause of action."); *Franchise Tax Board,* 463 U.S. at 9, 13, 103 S.Ct. 2841 (observing that a case may arise under federal law "where the vindication of a right under state law necessarily turns on some construction of federal law," or when "it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims"). Plainly, the first ground is inapposite. The Vaccine Act did not create the state tort actions here at issue. *Cf. Moore v. Chesapeake & Ohio R. Co.,* 291 U.S. 205, 216–217, 54 S.Ct. 402, 78 L.Ed. 755 (1934)

Practice & Procedure § 3722.1 at 508. In such a case, federal law may provide a rule of decision to the state forum, but removal jurisdiction may not be invoked on that basis alone (assuming that the rule of decision and its application in the case do not present a "substantial question of federal law"). *See Merrell Dow,* 478 U.S. at 814–15 n. 12, 106 S.Ct. 3229 (distinguishing cases where remov-

al is proper despite plaintiff's exclusive pleading of state causes of action because of the "nature of the federal issues at stake," and cases in which federal question removal would not lie, because "the violation of the federal standard as an element of state tort recovery did not fundamentally change the state tort nature of the action").

(finding no federal question jurisdiction where "[t]he action fell within the familiar category of cases involving the duty of a master to his servant. This duty is defined by the common law, except as it may be modified by legislation. The federal statute, in the present case, touched the duty of the master at a single point and, save as provided in the statute, the right of the plaintiff to recover was left to be determined by the law of the State.") (internal quotations omitted); *see also Mazur v. Merck & Co.*, 742 F.Supp. 239, 246 (E.D.Pa.1990) ("The [Vaccine Act] does not eliminate, however, the state tort system as an avenue of redress [for vaccine-related injuries].").

Defendant Merck proposes an analogy between the Vaccine Act and the Price–Anderson Amendments Act, 42 U.S.C. § 2011 *et seq.*, in support of its argument that federal question jurisdiction may exist, "even when the federal statute authorizing the cause of action provides that state law governs the claims." (Merck Mem. of Law in Opp. at 12.) But the authority cited by Merck is readily distinguished. The Price–Anderson Amendments Act "expressly created a federal cause of action for 'public liability actions,'" which the Act also provided "shall be deemed to arise under the Price–Anderson Act." *In re TMI Litigation Cases Consol. II*, 940 F.2d 832, 837 (3rd Cir.1991). Indeed, before the enactment of these express provisions, the Third Circuit had twice ruled that the Price–Anderson Act "created no federal tort cause of action and was not intended to confer jurisdiction upon the federal courts," and, in accord with this holding had remanded all removed cases in the TMI (Three Mile Island) litigation, and transferred those cases originally filed in the federal forum, to state court. *Id.* As the Third Circuit recognized in upholding the constitutionality of the Amendments Act, "Congress [had] clearly considered the decisions of our court holding that Congress had not intended to create a federal cause of action for cases not based upon an extraordinary nuclear occurrence ... [but] Congress then provided, in the Amendments Act, the clearest expression of intent that there be a federal cause of action arising directly under the Act." *Id.* at 857.[5]

The Vaccine Act contains no such expression of Congressional intent. To the contrary, it refers to the cause of action it authorizes as a "civil action for damages ... against a vaccine administrator or manufacturer *in a State or Federal court.*" 42 U.S.C. § 300aa–11(2)(A) (emphasis supplied). The Act further provides that, subject to certain defenses that shall be available to vaccine manufacturers, "*State law shall apply* to a civil action brought for damages for a vaccine-related injury or death." 42 U.S.C. § 300aa–22(a) (emphasis supplied). *See also* 42 U.S.C. §§ 300aa–16(c) (tolling state statutes of limitation during pendency of administrative proceedings under the Act); 300aa–

---

**5.** Merck's reliance on *Wheeling–Pittsburgh Steel Corp. v. Mitsui & Co.*, 26 F.Supp.2d 1022 (S.D.Ohio 1998) is also misplaced. There a domestic steel company had commenced an action against Russian and Japanese steel manufacturers in state court, and defendants had removed. The Court found that removal was proper because federal question jurisdiction lay under the Anti–Dumping Act, 15 U.S.C. § 72, which, the Court found, completely preempted the state action. Leaving aside the issue of complete preemption, it is worth noting that the Anti–Dumping Act authorizes "[a]ny person injured in his business or property by reason of any violation of ... this section ... [to] sue therefor in the district court of the United States for the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy...." 15 U.S.C. § 72. There is no comparable provision in the Vaccine Act. *See also Archer v. Arms Technology*, No. 99–CV–40254, 1999 WL 993306, at *3 (E.D.Mich. Oct. 14, 1999) (granting plaintiff's motion to remand action alleging state tort claims for negligence and public nuisance and distinguishing *Wheeling* "because the state law matters [there] were 'squarely in the federal field occupied by comprehensive Congressional statutory and executive administrative schemes'") (citing *Wheeling*).

22(e) ("No state may establish or enforce a law which prohibits an individual from bringing a civil action against a vaccine manufacturer for damages for a vaccine-related injury or death if such civil action is not barred by this part.").

The second ground upon which federal question jurisdiction might be sustained in this case is no more availing to the removing defendants. On first blush, the argument that substantial federal questions are presented in vaccine-related personal injury litigation looks more promising. After all, as defendant Merck points out, the Vaccine Act specifically prescribes that vaccine manufacturers shall have certain defenses, and the benefit of certain presumptions, in state law tort actions. *See* 42 U.S.C. §§ 300aa–22(b)(1) (providing that manufacturers shall not be liable for injuries or death "associated with the administration of a vaccine ... if the injury or death resulted from side effects that were unavoidable even though the vaccine was properly prepared and was accompanied by proper directions and warnings"); 300aa–22(b)(2) (establishing presumption that a vaccine was "accompanied by proper directions and warnings" if the manufacturer complied with applicable federal laws regarding the vaccine); 300aa–22(c) (providing that a manufacturer shall not be liable "solely due to [its] failure to provide direct warnings to the injured party"). The Act also prescribes a procedural rule for the trial of civil actions arising out of vaccine-related injury or death (requiring trifurcation between a liability stage, a general damages stage, and a punitive damages stage), and establishes a rule of evidence, barring the introduction of the "Vaccine Injury Table" set forth in 42 U.S.C. § 300aa–14 (as revised from time to time by the Secretary of Health and Human Services), and also of findings of fact and conclusions of law made by the United States Claim Court, or by a special master in proceedings on a petition filed under § 300aa–11. 42 U.S.C. § 300aa–23.

None of these features of the Vaccine Act compel the conclusion that, under applicable precedents, questions "substantial" enough to confer federal question jurisdiction are necessarily presented by vaccine-related personal injury litigation. Indeed, the defenses made available under the Act are indisputably insufficient to raise such questions. *See Gully v. First Nat'l Bank in Meridian,* 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936) ("To bring a case within the [federal question removal] statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential case may not be removed to federal court on the basis of a federal defense, ... even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case."). Moreover, the observation of the Court in *Merrell Dow* concerning the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.,* that Congress "did not intend a private federal remedy for violations of the statute that it enacted," also seems applicable to the Vaccine Act. The only remedies seemingly contemplated by the Vaccine Act are those available under the National Vaccine Injury Compensation Program, 42 U.S.C. §§ 300aa–10 *et seq.,* and, alternatively, those available pursuant to civil actions for damages governed by state law.

Section 300aa–23 (making findings of fact and conclusions of law of the United States Claims Court and from prior administrative proceedings inadmissible in a subsequent civil action) is peculiarly persuasive in driving this Court to conclude that the federal question jurisdiction the defendants claim to see is a mirage, and that plaintiffs' motion to remand must be granted. Had Congress made prior findings of fact and conclusions of law admissible in subsequent civil actions, and thereby left undisturbed their status as ingredients of prior federal judgments they would awaken principles of claim preclusion. But as the Supreme Court has recently made

clear, even that would not suffice to "transform the plaintiff's state law claims into federal claims but rather [would] extinguish[ ] them altogether.... Under the well pleaded complaint rule, preclusion thus remains a defensive plea involving no recasting of the plaintiff's complaint, and is therefore not a proper basis for removal." *Rivet*, 118 S.Ct. at 926 (citation omitted). It must surely follow that if those findings of fact and conclusions of law are not admissible in the subsequent civil action and, by clear implication, are to be accorded no preclusive effect, removal is also improper. *Cf. Astoria Federal Savings & Loan Assn. v. Solimino*, 501 U.S. 104, 111–12, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) (holding that Congress intended that state agency rulings have no preclusive effect in suits under the Age Discrimination Act of 1967, and noting that "applying preclusion would ... reduce to insignificance those cases in which federal consideration might be pursued in the wake of the completed proceedings of state agencies").

In any event, the mere presence of a federal issue as an element of a state tort action "is not the kind of adjudication for which jurisdiction would serve congressional purpose and the federal system." *Merrell Dow*, 478 U.S. at 814, 106 S.Ct. 3229. It follows—just as it did in *Merrell Dow*—that where Congress has declined to craft a federal remedy in a statutory scheme in which it has otherwise created or affected legal rights, it may safely be concluded that such federal elements as are introduced by the scheme into state causes of action are "insufficiently 'substantial' to confer federal question jurisdiction." *Id.*

Merck finally argues that the pre-emptive force of the Vaccine Act is so complete as to convert what would otherwise be common-law personal injury actions into actions stating a federal claim for the purposes of the well-pleaded complaint rule. This argument has been considered and rejected by several courts, and is no more persuasive here upon being raised anew. *See, e.g., Schafer v. American Cyanamid Co.*, 20 F.3d 1, 7 (1st Cir.1994) ("[T]he [Vaccine] Act's purposes do not point strongly towards pre-emption, and the Act's language suggests that pre-emption is not intended."); *Hurley v. Lederle Laboratories Division of American Cyanamid Co.*, 863 F.2d 1173, 1178 (5th Cir.1988) ("Although the [Vaccine Act] was passed after this case was filed, it is relevant as proof that Congress intends no preemption of the state law liability of vaccine manufacturers. The [Act] clearly states that state law remedies apply to the manufacture and sale of vaccines and it even makes recovery easier for injured consumers."); *Abbot v. American Cyanamid Co.*, 844 F.2d 1108, 1113 (4th Cir.) ("The [Vaccine Act] is replete with two powerful assumptions: one, state tort and contract actions are available without preemption by earlier federal legislation and two, following the 1986 Act's effect [sic] state law actions remain available."), *cert. denied*, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988); *Mazur v. Merck & Co.*, 742 F.Supp. at 246 ("The [Vaccine Act] clearly shows that Congress intended state tort remedies to remain in effect despite extensive federal regulations. The [Act] was enacted to provide an alternative to the courts for the redress of vaccine-related injuries. The [Act] established a fund from which individuals injured by vaccines may receive compensation if certain statutory requirements are met. The [Act] does not eliminate, however, the state tort system as an avenue of redress."). Merck's attempts to distinguish this authority are entirely unpersuasive.[6]

■ Plaintiffs also move for costs, including attorneys' fees, pursuant to 28

6. Merck notes that the reference in *Abbot* to the Vaccine Act is dictum, but then is able to summon only a single speculative footnote on behalf of its own argument that the Act is partially pre-emptive. *See MacGillivray v.* *Lederle Laboratories*, 667 F.Supp. 743, 746 (D.N.M.1987) (observing that the Act "may indeed serve to prevent future injured parties from bringing state claims based on defective design").

U.S.C. § 1447(c).[7] Under that provision, an award is discretionary, and is not predicated on a finding that removal was made improvidently, or in bad faith. *Morgan Guar. Trust v. Republic of Palau,* 971 F.2d 917, 924 (2d Cir.1992). At the same time, section 1447(c) "affords a great deal of discretion and flexibility to the district courts in fashioning awards of costs and fees, ... [and] requires application of a test of overall fairness given the nature of the case, the circumstances of the remand, and the effect on the parties." *Id.* at 923–24 (citation and internal quotation omitted). Here, although defendant Merck had no good reason to believe that its preemption argument would provide a basis for removal in this case—that argument has been conclusively rejected by every court to which it has been presented—the issues presented were otherwise matters of first impression. *See, e.g., Lamb v. Lederle Laboratories,* No. 94 CV 4879, 1994 WL 551536, at *2, n. 1 (E.D.Pa. Oct. 7, 1994) (noting that the district court in that case had previously rejected defendant's contention that plaintiff cause of action arising from a vaccine-related injury "arose under" the Vaccine Act, but not setting forth the reasons for that ruling). Thus, the basis removal was at least colorable not improper, and therefore, an award of costs and fees is inappropriate.

### CONCLUSION

For the reasons set forth above, plaintiffs' motion to remand this case to the Supreme Court for Kings County is granted, and plaintiffs' motion for costs and fees is denied.

SO ORDERED.

---

7. Section 1447(c) provides, in pertinent part, that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).