Alan R. STRAUSS and Tracy
D. Strauss, Plaintiffs,

v.

AMERICAN HOME PRODUCTS
CORPORATION, et al.,
Defendants.

No. Civ.A.G–02–226.

United States District Court,
S.D. Texas,
Galveston Division.

June 11, 2002.

Martin Jonathan Siegel, Watts & Heard LLP, Houston, TX, for plaintiffs.

Michael R. Klatt, Clark Thomas and Winters, Austin, TX, Rebecca Jo Reser, Ray McChristian, San Antonio, TX, Lee Davis Thames, Butler Snow O'Mara Stevens & Cannada, Jackson, MS, Gene M. Williams, Mehaffey & Weber, Beaumont, TX, John R. Gilbert, Gilbert & Moore PLLC, Angleton, TX, Douglas W. Poole, McLeod Alexander, Galveston, TX, Winstol D. Carter, Jr., Attorney at Law, Bryan, TX, Barclay A. Manley, Fulbright & Jaworski, Houston, TX, David Michael Macdonald, McCauley Macdonald & Devin, Dallas, TX, Raymond, G. Kolts, Kathlene Landgraf Kolts, Dean & Kolts, Coeur d'Alene, ID, for defendants.

### ORDER GRANTING BAXTER, WYETH, AVENTIS AND SMITH KLINE'S MOTIONS TO DISMISS, GRANTING BAXTER'S MOTION TO AMEND NOTICE OF REMOVAL AND DENYING PLAINTIFFS' MOTION FOR REMAND

KENT, District Judge.

Plaintiffs Alan D. Strauss and Tracy D. Strauss, parents of minor child Alan C. Strauss ("Alan"), bring this products liability lawsuit against Defendants Wyeth ("Wyeth") f/k/a American Home Products, Corp. d/b/a Wyeth–Ayerst, Wyeth Ayerst–Laboratories, Wyeth Lederle, Wyeth Lederle Vaccines and Lederle Laboratories; Aventis Pasteur, Inc. ("Aventis"), individually and as successor-in-interest to Connaught Laboratories, Inc., Pasteur Merieux and Pasteur Merieux Connaught; Baxter International, Inc. ("Baxter"), individually and as successor-in-interest to North American Vaccine, Inc.; Dow Chemical Company ("Dow"); Eli Lilly and Company ("Eli Lilly"); Smith Kline Beecham Corporation ("Smith Kline") d/b/a GlaxoSmithKline; Sigma–Aldrich ("Sigma"); and Meridian Pharmaceuticals, Inc. ("Meridian"), individually and as successor-in-interest to Meridian Chemical and Equipment, Inc., pursuant to the state laws of Texas. Now before the Court are four Motions filed by various Parties: (1) a Motion to Dismiss pursuant to Fed. R.Civ.P. 12(b) filed by Baxter and subsequently joined by Wyeth and Aventis; (2) a Motion to Dismiss pursuant to Fed. R.Civ.P. 12(b) filed by Smith Kline; (3) a Motion to Amend Notice of Removal filed by Baxter; and (4) a Motion to Remand for Lack of Subject Matter Jurisdiction filed by Plaintiffs. For the reasons articulated below, the Motions to Dismiss filed by Baxter, Aventis, Wyeth and Smith Kline are **GRANTED,** Baxter's Motion to Amend Notice of Removal is **GRANTED** and Plaintiffs' Motion to Remand is **DENIED.**

### I. Background

The tragic facts averred by Plaintiffs can be summarized concisely. Alan, who was born on November 26, 1989, received several routine childhood vaccinations between January of 1990 and June of 1991. A few months after Alan's first round of vaccinations, his language and learning skills began to regress. Eventually, Alan's ability to accomplish basic tasks (i.e. feeding and dressing himself) deteriorated and his motor skill development languished. Alan was subsequently diagnosed as mentally retarded. Today, Alan's learning and communication skills are severely limited and Alan often acts in a manner that is overly aggressive towards other children and injurious to himself. Alan cannot experience a "normal" teenage life, as he is in need of constant care. Most likely, Alan will require regular medical attention for the remainder of his life.

Plaintiffs believe that Alan's retardation was caused by the vaccines introduced into his body during his infancy. Based upon this hypothesis, Plaintiffs filed this lawsuit in a Texas state court on February 25, 2002, seeking damages from the companies that were involved in producing the vaccines administered to Alan twelve years ago. In their Original Petition, Plaintiffs aver an assortment of tort claims against two distinct categories of Defendants: (1) the manufacturers of vaccines—Baxter, Wyeth, Aventis, Meridian, Eli Lilly and Smith Kline; and (2) the manufacturers of one or more chemical constituents found within vaccines—Sigma and Dow.[1] On April 3, 2002, Baxter removed the action pursuant to this Court's diversity and fed-

---

1. This case is the latest in a string of childhood vaccine-related cases filed in this forum since the start of 2002. In presiding over these cases, the Court has become familiar with the Defendants' respective roles in the vaccine industry and finds it essential to distinguish between those who manufacture vaccines and those who manufacture the raw materials used to formulate vaccines. Thus,

eral question jurisdiction. Smith Kline and Sigma joined Baxter's Notice of Removal.[2]

## II. The Vaccine Act

The "[v]accination of children against deadly, disabling, but preventable infectious diseases has been one of the most spectacularly effective public health initiatives this country has ever undertaken. Use of vaccines has prevented thousands of children's deaths each year and has substantially reduced the effects resulting from disease." H.R.Rep. No. 99–908, at 4 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6345. However, while most children enjoy measurable benefit from immunization programs, "a small but significant number of have been gravely injured." *Id.* Two significant concerns are accompany these vaccine-related injuries: the inconsistency, expense, delay and unpredictability of the tort system in compensating claims of vaccine-injured children; and the instability and uncertainty of the childhood vaccine market inevitably caused by the risks of tort litigation. *See id.* at 7, 1986 U.S.C.C.A.N. at 6348. Fortunately, the National Vaccine Injury Compensation Program ("Program") ameliorates these concerns. The Program provides an avenue of recovery for injuries and deaths traceable to vaccinations that works with greater ease and on a faster timetable than the civil tort system.[3] *See Shalala v. Whitecotton,* 514 U.S. 268, 269, 115 S.Ct. 1477, 1478, 131 L.Ed.2d 374 (1995). In effect, it "ensure[s] that all children who are injured by vaccines have access to sufficient compensation for their injuries," H.R.Rep. No. 99–908 at 6345–6346, and "free[s] manufacturers from the specter of large, uncertain tort liability, and thereby . . . keep[s] manufacturers in the market." *Schafer v. Am. Cyanamid Co.,* 20 F.3d 1, 4 (1st Cir.1994).

The Program, set forth in the Vaccine Act, requires that vaccine-related claims are initially heard by special masters in the United States Court of Federal Claims ("Vaccine Court"), adjudicated informally and then accorded expeditious review. *See Whitecotton,* 514 U.S. at 270, 115 S.Ct. at 1478. This system streamlines the claims process by establishing standards of proof, under which individuals who suffer injuries within specified intervals after being administered a vaccine, benefit from a presumption that a vaccine caused those injuries. *See* 42 U.S.C. §§ 300aa–11(c)(1)(C)(i), 300aa–13(a)(1), 300aa–14; *Haggerty v. Wyeth Ayerst Pharm.,* 79 F.Supp.2d 182, 184 (E.D.N.Y.2000). A Program claimant may not file a civil action against a vaccine manufacturer or administrator unless the claimant initially files a timely petition in accordance with the Program's guidelines.[4] *See* 42 U.S.C. § 300aa–11(2)(A); *Whitecotton,* 514 U.S. at 270, 115 S.Ct. at 1478 (explaining that a claimant alleging an injury after the Vaccine Act's effective date "must exhaust the Act's procedures . . . before filing any *de novo* civil action in state or federal court"). If a claimant seeks compensation in a state

---

while Plaintiffs' Original Petition fails to distinguish between the two categories of Defendants, the Court will draw such a distinction itself.

**2.** Apparently, Aventis, Eli Lilly, Wyeth, Sigma and Dow had not yet been served with process at the time of Baxter's removal. There is apparently some conflict as to whether Meridian was served prior to the time of removal or shortly thereafter. However, whether Meridian was served before or after Baxter's remov-

al is of no consequence to the instant Motions.

**3.** The Program became effective on October 1, 1988.

**4.** A proper claimant, or "petitioner," under the Vaccine Act is "any person who has sustained a vaccine-related injury," or the legal representative of such person. 42 U.S.C. § 300aa–11(b)(1)(A).

or federal court for vaccine-related injuries prior to exhausting his or her remedies under the Vaccine Act, the Court must dismiss the action. *See* 42 U.S.C. § 300aa–11(a)(2)(B). Simply put, individuals who qualify as Program claimants *must* file petitions in the Vaccine Court in order to pursue any vaccine-related claims at all.[5] If an individual who prevails in the Vaccine Court is ultimately dissatisfied with his or her Program award, that individual may reject the award and pursue a traditional tort action in any forum.[6] *See* 42 U.S.C. § 300aa–21(a).

### III. Motions to Dismiss

Plaintiffs candidly admit that they never filed a Program petition seeking compensation for Alan's injuries. In their Motions to Dismiss, Baxter, Wyeth, Aventis and Smith Kline (collectively "Vaccine Manufacturers") highlight this fact and argue that Plaintiffs' failure to file a Program petition requires the Court to dismiss all claims filed against them pursuant to Fed.R.Civ.P. 12(b).[7] The Vaccine Manufacturers further allege that even if Plain-

tiffs did not need to file a Program petition prior to instituting this action, Plaintiffs' claims are nevertheless time-barred under Texas law. The Court will address each of the Vaccine Manufacturer's contentions in turn.

*Plaintiffs' Failure to File a Program Petition*

■ By its own terms, the Vaccine Act's proscription against bringing a civil action for damages prior to the filing of a Program petition "applies only to a person who has sustained a vaccine-related injury or death and who is qualified to file a petition for compensation under the Program." 42 U.S.C. § 300aa–11(a)(9). An individual becomes eligible to file a Program petition only if: (1) he or she suffers a specified injury after receiving a vaccine; or (2) if he or she is the legal representative of such a person. *See* 42 U.S.C. §§ 300aa–11(b)(1)(A), 300aa–11(c)(1)(A); *see also Schafer,* 20 F.3d at 7; *Head v. Sec'y of Dept. of Health and Human Servs.,* 26 Cl.Ct. 546, 547 n. 1 (1992), *aff'd,* 996 F.2d 318 (Fed.Cir.1993). In this

---

**5.** There are a few exceptions. *De minimis* claims for less than $1,000 may be brought in state or federal courts without prior filing under the Vaccine Program. *See* 42 U.S.C. § 300aa–11(a)(2)(A). However, the Vaccine Act requires that any vaccine-related action seeking an unspecified amount of damages (such as the instant lawsuit) be filed under the Program. *See id.*

**6.** Under the Program, the compensation awarded to a petitioner for a vaccine-related injury may include actual and un-reimbursable expenses and projected expenses for medical or other remedial care determined to be reasonably necessary; actual and anticipated lost earnings; and actual and projected pain and suffering subject to a statutory cap of $250,000. *See* 42 U.S.C. § 300aa–15(a). Punitive and exemplary damages are prohibited. *See* 42 U.S.C. § 300aa–15(d). Reasonable attorneys' fees and costs are awarded even if the petition is denied, so long as the special master determines that the petition was brought in good faith and that a reasonable

basis for asserting the claim existed. *See* 42 U.S.C. § 300aa–15(c). In the event that a petitioner chooses to reject a Program award, the Vaccine Act limits the tort remedies that become available. For instance, the Vaccine Act establishes compliance with Food and Drug Administration ("FDA") requirements as a partial defense for manufacturers, *see* 42 U.S.C. § 300aa–22(b)(2), and requires tort suits to be tried in three phases (liability, general damages and punitive damages). *See* 42 U.S.C. § 300aa–23(a). Moreover, a manufacturer's compliance with FDA guidelines generally precludes an award of punitive damages. *See* 42 U.S.C. § 300aa–23(d).

**7.** Although the Vaccine Manufacturers do not specify which provision of Rule 12(b) they are moving for dismissal under, the Court assumes that they are seeking a dismissal under Rule 12(b)(3) for improper venue, or in the alternative, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6); Fed.R.Civ.P. 12(b)(3).

case, neither Plaintiff alleges to have "suffered a relevant injury ... after he or she received a vaccine." Nor have Plaintiffs asserted any claims in a representative capacity. Therefore, the Vaccine Act's requirement that petitioners file a Program petition prior to a lawsuit does not bar Plaintiffs from filing the instant action against the Vaccine Manufacturers.[8] *See Schafer,* 20 F.3d at 5 (explaining that the Vaccine Act's tort suit ban does not apply to individuals who cannot file petition in the Vaccine Court except in a representative capacity); *Head,* 26 Cl.Ct. at 550 (holding that an award to a mother in her individual capacity in an action arising from vaccine-related injuries received by her daughter did not bar the daughter's subsequent action under the Vaccine Act); *McDonald v. Lederle Labs.,* 341 N.J.Super. 369, 775 A.2d 528, 535 (2001) ("The [Vaccine] Act does not preclude parents from filing an individual civil action for losses incurred by them."); *see also* 42 U.S.C. § 300aa–11(b)(1)(A) (expressly prohibiting Program "compensation for other than the health, education, or welfare of the person who suffered the vaccine-related injury").

8. However, the Court wishes to clarify that although Plaintiffs are not barred outright by the Vaccine Act from seeking individual damages (i.e. loss of consortium) from the Vaccine Manufacturers, they cannot recover from the Vaccine Manufacturers for any expenses that they have incurred on Alan's behalf. As explained above, the Vaccine Act provides compensation for actual and un-reimbursable expenses and projected expenses (incurred by the victim or on the victim's behalf) for medical or other remedial care determined to be reasonably necessary, actual and anticipated lost earnings, actual and projected pain and suffering of the victim and reasonable attorneys' fees and costs. The covered expenses include those costs which "have been or will be incurred by or on behalf of the [victim] ... for rehabilitation, developmental evaluation, special education, vocational training and placement, case management services, counseling, emotional or behavioral therapy,

## Statute of Limitations

As stated above, this lawsuit arises from personal injuries allegedly sustained by *Alan*—not by Plaintiffs themselves.[9] Plaintiffs' instant claims are therefore wholly derivative of Alan's underlying personal injury claims and consequently, the viability of Plaintiffs' claims against the Vaccine Manufacturers depends upon the validity of Alan's underlying cause of action. *See Reed Tool Co. v. Copelin,* 610 S.W.2d 736, (Tex.1980) (establishing that a plaintiff is barred from bringing a derivative claim unless the tortfeasor's liability for the underlying injury has been previously established); *see also Owens ex rel. Schafer v. American Home Prods. Corp.,* 203 F.Supp.2d 748, 753–55 (S.D.Tex.2002) (explaining that in a case brought by parents of a child allegedly injured by a vaccine, parents' individual claims are derivative of the child's claims).

### Alan's Vaccine Court claim is time-barred

Notably, Plaintiffs contend that they noticed symptoms of Alan's alleged vaccine-related injuries "a few months" after Alan

residential and custodial care and services expenses, and facilities determined to be reasonably necessary." 42 U.S.C. § 300aa–15(a)(1). Because Plaintiffs failed to seize their opportunity to seek reimbursement for these expenses in the Vaccine Court, Plaintiffs are ineligible to recover damages via an action wherein they assert individual claims against the Vaccine Manufacturers. Allowing them to do so would clearly undermine the stated objectives of the Vaccine Act.

9. The Court reaches this conclusion because Plaintiffs make no suggestion that they suffered any personal injuries (i.e. emotional distress). While Plaintiffs do allege monetary losses related to Alan's condition, the Court has already established that any attempt to recover such costs is barred by the Vaccine Act. Thus, the only injuries at issue are those that Alan allegedly sustained.

was vaccinated in 1990 and 1991. As such, because the Vaccine Act mandates that "no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury," *see* 42 U.S.C. § 300aa–16(a)(2), Plaintiffs are no longer eligible to seek compensation for Alan's alleged injuries in the Vaccine Court.[10]

### Plaintiffs' derivative claims are time-barred

■ This Court concurs with the New Jersey Supreme Court's recent determination that "[t]he plain meaning of the [Vaccine] Act and the Congressional intent are consistent with the conclusion that failure to file a timely petition under the Program bars the later pursuit of a State tort action through the Program's election procedure." *McDonald*, 775 A.2d at 532. Thus, when Plaintiffs failed to file a Program petition within thirty-six months after first detecting Alan's symptoms, they became ineligible to file a tort suit against the Vaccine Manufacturers on Alan's behalf. And because Alan's underlying tort claims against the Vaccine Manufacturers are time-barred, Plaintiffs' derivative claims against the Vaccine Manufacturers are time-barred as well. *See Am. Industries Life Ins. Co. v. Ruvalcaba*, 64 S.W.3d 126,

144 (Tex.App.—Houston [14th Dist.] 2001, pet. filed) (explaining that loss of consortium claims are derivative of the underlying personal injury claim and therefore barred if the personal injury claimant has no recovery); *Howard v. Fiesta Texas Show Park, Inc.*, 980 S.W.2d 716, 719 (Tex. App.—San Antonio, 1998, pet. denied) ("Claims for loss of consortium and loss of services are derivative of the injured family member's cause of action for personal injuries and are subject to the same statute of limitations and defenses that preclude liability."). Plaintiffs simply cannot assert derivative claims that are premised upon an extinct cause of action.

The Court emphasizes that it certainly sympathizes with Plaintiffs' plight and is genuinely sorry that Plaintiffs, for whatever reason, neglected to file a Program petition in a timely fashion. Nevertheless, the principle that "[e]quity aids the vigilant and not those who slumber on their rights" is firmly rooted in our legal system. *Nat'l Assoc. of Gov't Employees v. City Pub. Service Bd. of San Antonio, Texas*, 40 F.3d 698, 708 (5th Cir.1994). Accordingly, the Court is bound to find that Baxter, Aventis, Wyeth and Smith Kline's Motions to Dismiss must be **GRANTED** and as such, Plaintiffs' ill-timed derivative claims against those Defendants are hereby **DISMISSED WITH PREJUDICE.**[11]

---

10. Plaintiffs argue that the Vaccine Act's thirty-six month limitations period does not apply in this case because they only recently discovered that Alan's injuries were vaccine-related. However, the "discovery rule" does not apply to the Act's limitations period and the Act fails to provide for an equitable tolling period. *See Brice v. Secretary of Health and Human Servs.*, 240 F.3d 1367, 1373 (2001) (explaining that Congress intended the Vaccine Act's limitations period to commence upon the onset of injury and it should not be delayed until the time that petitioner actually knows that the vaccine recipient suffered from an injury compensable under the Act).

11. The Court suspects that the reasoning behind its decision to dismiss Plaintiffs' claims against Baxter, Aventis, Wyeth and Smith Kline applies with equal force to Eli Lilly and Meridian (the other two Vaccine Manufacturer Defendants). However, because Eli Lilly and Meridian have not requested dispositive relief at this time, Plaintiffs' claims against them remain pending. With regard to Sigma and Dow, the Court points out that the Vaccine Act only prohibits the filing of any civil action against a "vaccine *manufacturer* or *administrator*" prior to the filing of a Program petition. 42 U.S.C. § 300aa–11(2)(A) (emphasis added). Because Sigma and Dow supply vaccine constituents (the raw materials used

## IV. Motion to Amend Notice of Removal

■ Within the thirty-day period prescribed by § 1446(b), a defendant may freely amend its notice of removal. *Blakeley v. United Cable System*, 105 F.Supp.2d. 574, 578 (S.D.Miss.2000). And the majority of courts—including the Fifth Circuit—recognize that even after expiration of this thirty-day period, a defendant may still amend its removal petition in order to cure defective allegations of jurisdiction. *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 920 n. 9 (5th Cir.2001); ("[P]rior to judgment, a party may amend its pleadings to allege omitted jurisdictional facts"); *Whitmire v. Victus, Ltd.*, 212 F.3d 885, 888 (5th Cir.2000) (emphasizing that § 1653 should be broadly construed); *D.J. McDuffie, Inc. v. Old Reliable Fire Ins. Co.*, 608 F.2d 145, 146 (5th Cir.1979) (holding that amendment of removal petition was properly allowed to correct jurisdictional allegations in removal petition which were defective or faulty due to defendants' failure to specifically allege the citizenship of the parties at the time the suit was brought and at the time the removal petition was filed; missing allegation was not a fatal omission which could not be cured by amendment).

The authorization for such amendments derives from 28 U.S.C. § 1653, which states in pertinent part: "Defective allegations of jurisdiction may be amended ... in the trial or appellate courts." 28 U.S.C. § 1653. Thus, "where a defendant, for example, has alleged the existence of diversity jurisdiction in its removal petition but has failed to allege all of the specific

facts, or has incorrectly alleged some of the facts underlying its jurisdictional conclusion, courts ... allow[ ] amendments to cure these deficiencies." *Blakeley*, 105 F.Supp.2d at 578–79. However, there is an important caveat to this principle: A defendants' ability to amend its removal petition after the thirty-day time period for removal prescribed by § 1446(b) extends only to amendments that correct *technical* defects in the defendant's original jurisdictional allegations. *See id.* at 579. A defendant may *not* amend its removal notice to remedy a *substantive* defect (i.e., to add a new basis for federal jurisdiction) after the thirty-day time limit expires. *See id.; Briarpatch Ltd. v. Pate*, 81 F.Supp.2d 509, 516–17 (S.D.N.Y.2000).

Baxter's Notice of Removal alleges federal jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1332 (diversity jurisdiction). Now Baxter seeks to amend the following language to its Removal Notice:

[Plaintiffs state court] Petition alleges that Defendant "Meridian Chemical and Equipment, Inc., doing business as Meridian Pharmaceuticals, Inc." is a foreign corporation with its headquarters and principal place of business in Texas. However, there is no corporation or other business entity known as "Meridian Chemical & Equipment, Inc." doing business as Meridian Pharmaceuticals, Inc .. "Meridian Pharmaceuticals, Inc." is the successor corporation to Meridian Chemical & Equipment, Inc .. The acquisition of Meridian Chemical & Equipment, Inc. by Meridian Pharmaceuticals,

to formulate vaccines) to the Vaccine Manufacturers, but do not manufacture or administer vaccines themselves, Plaintiffs' claims against Sigma and Dow are not subject to the Vaccine Act's tort suit ban. Accordingly, the Court's reasoning in Part III of this Opinion in no way affects Plaintiffs' pending claims against the chemical manufacturer Defen-

dants. However, the Court notes that the general limitations period for tort actions in Texas applies to those claims. If Sigma and Dow believe that the Texas statute of limitations bars Plaintiffs action against them (and the Court is in no way suggesting that it does), they are free to seek dispositive relief on that basis in due course.

Inc. occurred before [the date that Plaintiffs' Petition was filed]. Meridian Pharmaceuticals, Inc. is incorporated in the state of Alabama and has been since before [the date that Plaintiffs' Petition was filed]. Meridian Pharmaceuticals, Inc. has its principal place of business in the State of Alabama and has never had it elsewhere. These facts are conclusively established by the May 21, 2002 Affidavit of Mickey Letson attached hereto.

Evidently, the proposed amendment does not attempt to add a new basis for federal subject matter jurisdiction. Rather, Baxter seeks only to remedy a technical defect in its Notice of Removal by clarifying the facts that underlie its prior allegation of diversity jurisdiction. Thus, the applicable case law overwhelmingly counsels in favor of allowing Baxter to add the requested language to its jurisdictional allegations. The Court therefore ascertains that Baxter's Motion to Amend must be **GRANTED.**

### V. Motion to Remand

Finally, the Court turns to Plaintiffs' Motion to Remand. In their Motion, Plaintiffs maintain that the Court lacks jurisdiction over this action because both Plaintiffs and Meridian are Texas citizens.[12] However, Plaintiffs' Motion to Remand refers to the citizenship of Meridian Chemical and Equipment, Inc., the predecessor-in-interest to Meridian, not to the citizenship of Meridian itself. Baxter's amendment to its Notice of Removal (previously set forth in full) addresses this distinction and professes that Meridian is a citizen of Alabama for diversity purposes. The Affidavit of Mickey Letson, submitted in conjunction with Baxter's Motion to Amend, lends convincing support to this notion. Letson, Meridian's President, avers that:

> Meridian is incorporated in the State of Alabama and ... has its principal place of business in the State of Alabama. Meridian operates out of its main corporate headquarters in Decatur, Alabama. All senior management, officers and directors for Meridian are located in the State of Alabama. Corporate decisions and strategy originate in the corporate headquarters in Decatur, Alabama. Further, an overwhelming majority of the manufacturing and distribution conducted by Meridian occurs within the state of Alabama.

Notably, Plaintiffs do not offer any competent evidence rebutting Letson's Affidavit. Thus, in light of Letson's uncontroverted pronouncement and Baxter's clarification to its jurisdictional allegations, the Court finds that Meridian is an Alabama citizen for all jurisdictional purposes. Accordingly, Plaintiffs' Motion to Remand is hereby **DENIED.**

In conclusion, the Court reiterates that all claims asserted by the Plaintiffs against Baxter, Aventis, Wyeth and Smith Kline are hereby **DISMISSED WITH PREJUDICE.** A final judgment reflecting this determination will be issued in due course. Finally, Plaintiffs' claims against Meridian, Eli Lilly, Sigma and Dow remain pending and subject to future adjudication by the Court.

**IT IS SO ORDERED.**

---

**12.** For diversity purposes, a corporation qualifies as a citizen "of any State by which it has been incorporated and the State where it has its principal place of business." 28 U.S.C. § 1332(c).