Alan J. CHESKIEWICZ, A Minor, Parents and Natural Guardians, Allan J. Cheskiewicz and Rita M. Cheskiewicz and Allan J. Cheskiewicz and Rita M. Cheskiewicz, in Their Own Right, Appellants,

v.

AVENTIS PASTEUR, INC., Individually and as Successor in Interest to Connaught Laboratories, Inc., Pasteur Merieux and Pasteur Merieux Connaught, Eli Lilly & Company, Wyeth, Wyeth Laboratories, Wyeth–Ayerst, Wyest–Ayerst Laboratories, Wyeth Lederle, Wyeth Lederle Vaccines and Lederle Laboratories, Smithkline Beecham Corporation D/B/A Glaxosmithkline, Sigma–Aldrich, Inc., American International Chemical, Inc. Pfizer Inc. and Warner–Lambert Company, Appellees.

Superior Court of Pennsylvania.

Argued June 25, 2003.
Filed Feb. 23, 2004.

Dominique D. Michel, Alexandria, VA, for appellants.

Mark A. Dover, Kansas City, MO and Therese M. Kelley, Philadelphia, for Eli Lilly, appellee.

Gaele M. Barthold, Philadelphia, for Sigma-Aldrich, appellee.

Gray Miller, Houston, TX, for Smith-Kline, appellee.

Before: JOYCE, BENDER and BOWES, JJ.

BOWES, J.

¶ 1 Alan and Rita Cheskiewicz ("Parents") individually and on behalf of their minor son, A.J., instituted a lawsuit asserting six causes of action[1] against various drug companies.[2] Parents claimed that A.J. was injured by exposure to the mercury contained in thimerosal, a preservative found in childhood vaccines. All defendants filed preliminary objections arguing, *inter alia*, that the complaint should be dismissed for failure to exhaust administrative remedies under the National Childhood Vaccine Act, 42 U.S.C. §§ 300aa–1 to 300aa–34 (1986) ("Vaccine Act"). The trial court agreed with defendants' position that Parents' state court action was premature and dismissed it in its entirety. We affirm.

### The Vaccine Act

¶ 2 The Vaccine Act was enacted in 1986 as a federal no-fault compensation program for persons injured by vaccines outside the parameters of traditional tort law. This streamlined program establishes standards of proof under which injured claimants benefit from a presumption that

---

1. The causes of action alleged are: strict products liability for defective design, strict products liability for failure to warn, negligence in manufacturing, marketing, and selling, breach of the implied warranty of merchantability, breach of an express warranty, and fraud.

2. The remaining defendants are: Aventis Pasteur, Inc.; Wyeth; SmithKline Beecham Corp., d/b/a GlaxoSmithKline (the "vaccine defendants"), and Sigma–Aldrich, Inc.; Eli Lilly and Company; and American International Chemical, Inc. (the "thimerosal defendants").

a vaccine listed in the Act's Vaccine Injury Table, *see* 42 U.S.C. § 300aa–14, caused their injuries. 42 U.S.C. §§ 300aa–11(c)(1)(C)(i), 300aa–13(a)(1); *Haggerty v. Wyeth Ayerst Pharmaceuticals*, 79 F.Supp.2d 182, 184 (E.D.N.Y.2000). The Act **requires** that a person with a vaccine-related injury file a petition in Vaccine Court, which is a special tribunal of the Federal Court of Claims, before proceeding in either state or federal court. 42 U.S.C. §§ 300aa–11(a)(2)(A). If a premature action has been filed in a state or federal court, that court "shall dismiss the action." 42 U.S.C. § 300aa–11(a)(2)(B). A Vaccine Act claim must be filed within thirty-six months "after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such [vaccine-related] injury." 42 U.S.C. § 300aa–16(a)(2). The Act provides an exception to the exhaustion requirement where a contaminant or adulterant was intentionally added to the subject vaccine. 42 U.S.C. § 300aa–33(5). Finally, if an individual prevails in the Vaccine Court, but is dissatisfied with the outcome, the award may be rejected and a traditional tort action pursued. 42 U.S.C. § 300a.

### Facts and Procedural History

¶ 3 A.J. was born on May 15, 1994, and was administered certain vaccines between May 1994 and December 1995. When he was eighteen months old, A.J.'s development regressed. He began losing language and motor skills and became withdrawn and non-interactive. In May 2001, seven years from when he was administered his first vaccine, A.J. was diagnosed as suffering from disintegrative autism resulting from mercury toxicity. The mercury poisoning allegedly resulted from exposure to cumulative doses of thimerosal, a biocide present in vaccines dispensed to A.J.

¶ 4 In May 2002, Parents initiated an action to recover for A.J.'s vaccine-related injuries in the Philadelphia Court of Common Pleas. The filing occurred approximately six and one-half years after the first manifestation of A.J.'s symptoms and three and one-half years after the expiration of the Vaccine Act's thirty-six month statute of limitations. All defendants filed preliminary objections requesting dismissal of the action because, among other reasons, Parents failed to exhaust the administrative remedies outlined in the Vaccine Act.

¶ 5 In their responsive pleading, Parents countered that since they could not file a timely claim in Vaccine Court, they were not "qualified litigants" under the Act. Parents additionally asserted that the Vaccine Act did not govern their claims because A.J.'s injuries were caused by thimerosal and, as such, were exempt from the Act. They also argued that the Act's thirty-six month filing requirement was unconstitutional. Concerning damages, Parents contended that their claim for A.J.'s medical expenses was not covered by the Vaccine Act. Parents then informally requested leave to amend the complaint to advance a claim in their own right for loss of A.J.'s services.

¶ 6 On December 16, 2002, the trial court dismissed Parents' action pursuant to the dictate of the Vaccine Act that claimants first exhaust the remedies provided by the Act. The court rejected Parents' claim that because they were unable to file their action within thirty-six months from the onset of A.J.'s symptoms, they did not qualify as litigants under the Act. Additionally, the court determined that thimerosal was not an adulterant or contaminant thereby exempting the claim from the requirements of the Vaccine Act. The court then rejected Parents' constitutionally-based claims as lacking supporting authority. Finally, the court opined that

Parents' claim for medical expenses was encompassed by the Act's language providing recovery for expenses incurred "on behalf of the minor." [3] Trial Court Opinion, 12/17/02, at 4.

¶ 7 Parents filed a petition for reconsideration complaining that the trial court dismissed the action before the time allotted to file their response to the thimerosal defendants' preliminary objections and failed to consider their request to amend the complaint to add a claim for loss of services. The trial court denied the motion for reconsideration. This appeal followed.

¶ 8 On appeal, Parents reiterate their arguments offered in opposition to the grant of preliminary objections: 1) they are not "qualified litigants" under the Act; 2) an interpretation of the Act barring this claim from proceeding in state court renders its provisions unconstitutional in violation of equal protection, due process and their right to a jury trial; 3) the claim for medical expenses incurred during A.J.'s minority is not encompassed by the Act; 4) the Act did not apply to claims against the thimerosal defendants; and 5) the trial court abused its discretion when it denied Parents' request for leave to amend the complaint to add a claim for A.J.'s loss of services and sustained the thimerosal defendants' preliminary objections prior to Parents filing a response thereto.

 ¶ 9 When we review an appeal from the grant of preliminary objections we examine the allegations of the complaint to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. We will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. *City Lighting Products Co. v. Carnegie Institute*, 816 A.2d 1196 (Pa.Super.2003).

### Are Parents "Qualified Litigants?"

¶ 10 Parents' claim that they did not become aware of the causative link between A.J.'s autism and the vaccines he received until after the expiration of the Vaccine Act's thirty-six month limitations provision. Thus, they continue, since they were unable to timely file in the Vaccine Court, they are "unqualified" to pursue a claim in compliance with the Act. Parents propose that three provisions of the Act, the general statutory rule governing petitions for compensation, section 11(a)(2), the qualifications provision, section 16(a)(2), and the limitations of actions section, when read together, grant an exception to the rule that Vaccine Court remedies must be exhausted before proceeding to state court. Parents interpret the interweaving of these sections to mean that claimants who have not filed petitions within thirty-six months of the first manifestation of onset of injury are not "qualified" litigants and therefore not required to file first in Vaccine Court.

 ¶ 11 This issue raises a question of statutory interpretation. If the statutory language is clear, its terms are enforceable. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). The general rule provision of the Vaccine Act mandates that a petition must be filed in Vaccine Court before initiating a civil action in either state of federal court:

> No person may bring a civil action for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer in a State or Federal court for

---

**3.** The precise statutory language allows for recovery of actual "unreimbursable expenses ... which have been or will be incurred by or

on behalf of the **person** who suffered such injury." 42 U.S.C. § 300aa–15(1)(A)(ii) (emphasis added).

damages arising from a vaccine-related injury or death associated with the administration of a vaccine · ... and no such court may award damages in an amount greater than $1,000 in a civil action for damages for such a vaccine-related injury or death, unless a petition has been filed, in accordance with section 300aa–16 of this title....

42 U.S.C. § 300aa–11(a)(2)(A). The Act further instructs that petitions for vaccine-related injuries must be filed within thirty-six months of the occurrence or manifestation of onset of the injury:

In the case of ... a vaccine set forth in the Vaccine Injury Table ..., if a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury.

42 U.S.C. § 300aa–16. Section 300aa–11(a)(9) then informs that section 300aa–11 applies "only to a person who has sustained a vaccine-related injury or death and who is qualified to file a petition for compensation under the program." Parents construe these provisions as delineating the ability to file a timely claim as an element of qualification.

¶ 12 Parents' claim is legally untenable. The specific provision describing qualified Vaccine Court litigants is found in 42 U.S.C. § 300aa–11(c)(1)(A)–(E). Succinctly, the requirements are that a petitioner: (1) received a vaccine set forth in the Vaccine Injury Table, § 300aa–11(c)(1)(A); (2) in the United States, § 300aa–11(c)(1)(D); (3) sustained an injury caused by the vaccine, § 300aa–11(c)(1)(C); (4) suffered residual effects for more than six months after the date of vaccination, § 300aa(c)(1)(D); and (5) has not previously received compensation.

§ 300aa–11(c)(1)(E). These are the requisites for filing, not including, as Parents maintain, that the purported claim is timely.

¶ 13 Despite this plain statutory language, Parents suggest that their qualification argument is supported by the legislative history of the Vaccine Act. "[O]nly the most extraordinary showing of contrary intentions from [the legislative history] would justify a limitation on the 'plain meaning' of the statutory language." *Garcia v. United States,* 469 U.S. 70, 75, 105 S.Ct. 479, 83 L.Ed.2d 472, (1984) (quoting *TVA v. Hill,* 437 U.S. 153, 187, n. 33, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978)); *see also Mansell v. Mansell,* 490 U.S. 581, 592, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989) (plain and unambiguous meaning of statute prevails in absence of clearly expressed contrary legislative intent).

¶ 14 Parents similarly cannot succeed in their assertion that the legislative history of the Vaccine Act validates their claim to exemption on the basis that they are not qualified litigants. The Vaccine Act was enacted to protect the nation's vaccine supply and to create a fair and easily-administered program to provide compensation for vaccine-related injuries. H.R.Rep. No. 99–908, at 5–7 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6634; 6346–48. The statute has a twofold policy: to expedite the award of damages and to protect vaccine manufacturers from burdensome litigation. *Id.* at 4, 1986 U.S.C.C.A.N. at 6344. All individuals injured by a vaccine administered after the date of enactment of the legislation, if seeking recourse, must do so in the compensation program. *Id.* Thus, the legislative history reinforces the plain meaning construction of the Act that those seeking redress must proceed to the Vaccine Court.

¶ 15 Additionally, courts confronted with exhaustion issues have strictly construed

the thirty-six month limitations provision. *See Strauss v. American Home Products Corp.,* 208 F.Supp.2d 711 (S.D.Tex.2002) (late filing in Vaccine Court does not translate into freedom to sue in civil court); *Dickey v. Connaught Laboratories, Inc.,* 334 Ill.App.3d 1048, 268 Ill.Dec. 51, 777 N.E.2d 974, 977 (2002) (plain language of Vaccine Act requires injured parties to file claim within Act's statutory time allowance before bringing action in state court); *McDonald v. Lederle Laboratories,* 341 N.J.Super. 369, 775 A.2d 528, 532–33 (App. Div.2001) (failure to file timely Vaccine Act petition bars pursuit of state tort action for vaccine-related injury); *Ashton v. Aventis Pasteur,* 2003 WL 21361355, at *8 (Phila.Com.Pl. May 22, 2003) (state court action barred for vaccine-related injuries unless petition filed in accordance with Vaccine Act's limitations provision).

¶ 16 Recently, in *Nestlen v. Wyeth,* Case Nos. 0201–00126 and 010605780 (Ore.Cir. Ct. Mar. 19, 2003), the Oregon circuit court rejected the precise argument raised by Parents herein, *i.e.,* that the plaintiffs were not qualified litigants because they did not file a petition in Vaccine Court within thirty-six months of the occurrence of the first symptom of a vaccine-related injury. The Oregon court analyzed the relevant provisions of the Act and its legislative history and decided that to interpret the statute to eliminate the plaintiffs as qualified litigants would "defeat the stated purpose of the Act." *Id.* at 9.

¶ 17 Our independent analysis of Parents' claim comports with the decision of the Oregon court. Parents' assertion that their lack of knowledge of a causative link between A.J.'s injuries and the vaccines he received renders them unqualified to litigate under the provisions of the Vaccine Act is contradicted by the clear statutory language of the Act. Rather, they must litigate A.J.'s claim before the statutorily-mandated forum created by the Vaccine Act. We acknowledge that despite the latent discovery of the causal connection between autism and mercury toxicity, Parents' Vaccine Act claim likely will be adjudged untimely. *See Brice v. Secretary of HHS,* 240 F.3d 1367 (Fed.Cir.2001) (equitable tolling does not apply in Vaccine Program). Nonetheless, Parents must await a determination from the Vaccine Court and cannot anticipate its decision and proceed prematurely to state court.[4]

### Constitutionality of Vaccine Act

■ ¶ 18 Parents also level a constitutional challenge to the limitations provision of the Vaccine Act arguing that the statute violates the equal protection clause, infringes on due process rights, and denies the right to a jury trial. We have already determined that Parents do not have a right to bring an action in state court until they have exhausted their administrative remedies. Therefore, it would be judicially imprudent at this juncture to discuss the constitutionality of the Vaccine Act. As Parents must litigate their claim on A.J.'s behalf before the Vaccine Court, that is the appropriate forum in which to raise the constitutional issues.[5]

---

**4.** Parents should note that a Special Master appointed to oversee the large number of autism cases before the Vaccine Court has observed that proposals to modify the limitations provision of 42 U.S.C. § 300aa–16(a) are pending before Congress to redefine the period for timely filing a program petition. *See Stewart ex rel. Stewart v. Secretary of* *Health and Human Services,* 2002 WL 31965743, at *10–11 (Fed.Cl. Dec. 30, 2002).

**5.** The Vaccine Act does not provide any textual authority to the Special Masters to determine the constitutionality of its provisions. *Kuehn ex rel. Kuehn v. Secretary of Health and Human Services,* 2003 WL 22416683, at *3

## Medical Expenses Claim

■ ¶ 19 Parents argue that the trial court erred in dismissing their individual claims for medical expenses incurred during A.J.'s minority because these expenses, contrary to the trial court's conclusion, fall outside the scope of the Vaccine Act. The compensation provision of the Act provides that awards include actual unreimbursable expenses which either "have been or will be incurred on behalf of the person who suffered [vaccine-related injury]." 42 U.S.C. § 300aa–15. Thus, the Vaccine Act clearly provides for payment of medical expenses incurred on the minor child's behalf, and Parents' state court claim for these costs must also be dismissed. *See Strauss v. American Home Products Corp.,* 208 F.Supp.2d 711, 715 n. 8 (S.D.Tex.2002); *Chiles v. American Home Products Corp.,* 2003 WL 22287527, *at 1 (N.D.Tex. Oct.2, 2003).

¶ 20 Parents' reliance on *Schafer v. American Cyanamid Co.,* 20 F.3d 1 (1st Cir.1994), to support an assertion that medical expenses are recoverable in a tort action is unavailing. In *Schafer,* the parents of a polio vaccine victim brought a state tort action for the parents' loss of the child's companionship and consortium. The Court of Appeals for the First Circuit delineated the specifics of the Vaccine Act including the following regarding compensable amounts under the statute: "[The Act] specifies other types of harm for which compensation may be awarded (e.g., **medical expenses,** loss of earnings). *Id.* at 2 (citation omitted) (emphasis added). The appeals court then decided that loss of

companionship and consortium claims were not barred by the Act's exhaustion requirement because the Vaccine Court has held that "a parent *can* both obtain a loss of consortium 'award' from a state court ... and also obtain compensation for ... [an] injured child from the Vaccine Court." *Schafer,* 20 F.3d at 6 (emphasis in original). Thus, *Schafer,* rather than supporting Parents' argument that their claim for reimbursement for A.J.'s medical expenses falls outside the Vaccine Act, defeats it.[6]

## Are thimerosal defendants subject to provisions of Vaccine Act?

¶ 21 In regard to the thimerosal defendants, Parents contend that the Vaccine Act does not require them to proceed with their action in the Vaccine Court because A.J.'s causes of action against these entities are not vaccine-related. The Vaccine Act defines a "vaccine-related injury" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such vaccine." 42 U.S.C. § 300aa–33(5). Parents assert that A.J.'s injuries were caused not by the vaccines themselves but by the thimerosal added to the vaccines, *i.e.,* an "adulterant ... intentionally added to such vaccine." 42 U.S.C. § 300aa–33(5).

■ ¶ 22 It appears that every federal court that ruled on this issue has held that injuries resulting from thimerosal con-

---

(Fed.Cl.2003). However, the Act allows for appeal from decision of the Vaccine tribunal to the Federal Circuit under 42 U.S.C. § 300aa–12(f), where a constitutional challenge can be entertained.

**6.** Indeed, in *Stewart v. American Home Products Corp.,* 2002 WL 32074879, at *1–2 (S.D.Miss.2002), *vacated on other grounds,*

*Collins ex rel. Collins v. American Home Products, Inc.,* 343 F.3d 765 (5th Cir.2003), the district court cited *Schafer* for the proposition that compensation under the Act includes medical expenses incurred on behalf of the injured person and that the plaintiffs before it cannot avoid applicability of the Vaccine Act's tort suit ban by suing in their own name for costs that are compensable under the Act.

tained in vaccines are vaccine-related under the meaning of the Act. *See Liu v. Aventis Pasteur*, 219 F.Supp.2d 762 (W.D.Tex.2002); *Owens v. American Home Products Corp.*, 203 F.Supp.2d 748 (S.D.Tex.2002); *McDonald v. Abbott Laboratories*, 2002 WL 32074880 (S.D.Miss. Aug.1, 2002); *Strauss v. American Home Products Corp.*, 208 F.Supp.2d 711 (S.D.Tex.2002); *Blackmon v. American Home Prod. Corp.*, 267 F.Supp.2d 667 (S.D.Tex.2002); *Bertrand v. Aventis Pasteur Laboratories, Inc.*, 226 F.Supp.2d 1206 (D.Ariz.2002). We see no reason to depart from the logic of these decisions and sustain the dismissal of the claims against the thimerosal defendants.

**Denial of Request to Amend Complaint**

¶ 23 In their memorandum of law in opposition to the vaccine defendants' preliminary objections, Parents requested leave to amend to add a claim for loss of A.J.'s services, a claim they purport is outside the purview of the Vaccine Act. They repeated this request in their memorandum of law filed in opposition to Sigma–Aldrich's and Eli Lilly's separately-filed preliminary objections. The trial court did not respond to the first request and then issued its order dismissing the complaint before Parents' response to certain of the thimerosal defendants' pleadings was due.[7]

██ ¶ 24 Leave to amend is within the sound discretion of the trial court and should be liberally granted. However, given the offhand and procedurally irregular manner in which the request for leave to amend was presented to the trial court, we cannot say that the refusal to grant leave to amend represented an abuse of discretion.

**Dismissal Prior to Filing Responsive Pleading**

██ ¶ 25 The trial court issued its order dismissing the case in its entirety ten days before Parents' response to the thimerosal defendants' preliminary objections was due. While this admittedly premature action appears facially problematic, any resulting error subsequently was cured. Parents filed a petition for reconsideration with the subject pleadings attached. We have no reason to conclude that the trial court did not consider these documents when it reviewed and ultimately denied the petition for reconsideration. Thus, there was no abuse of discretion.

**Conclusion**

¶ 26 The law is clear that Parents were required to exhaust their Vaccine Act remedies before pursuing a state court action. Cases which hold that there is no equitable tolling in Vaccine Act cases exact a harsh result in this case to which we are not unsympathetic. Nonetheless, Parents' failure to act in compliance with the Act's strict filing provisions precludes state court adjudication at this time.

¶ 27 Order affirmed.

7. We note that Parents do not offer any authority for the proposition that Pennsylvania law permits recovery for loss of a child's services. Research reveals that our jurisprudence allows a parent to sue for the lost value of an injured child's services, *see Quinn v. City of Pittsburgh*, 243 Pa. 521, 90 A. 353 (1914) and *Brower v. City of Philadelphia*, 124 Pa.Cmwlth. 586, 557 A.2d 48 (1989), *appeal denied*, 525 Pa. 604, 575 A.2d 569 (1990), but recognizes no such cause of action for a parent's loss of a child's consortium. *Fields v. Graff*, 784 F.Supp. 224, 226 –227 (E.D.Pa. 1992).