Justice CASTILLE and BAER join this dissenting opinion.

◼◼◼◼◼◼

Charles R. ASHTON, III and Penny Starr–Ashton, Parents and Natural Guardians of Madigan Ashton and Lucinda Ashton, Barbara and Alan Kaplan, Parents and Natural Guardians of Samuel Kaplan, and Lynn and Robert Powell, Parents and Natural Guardians of Robby Powell, Minor Children, on Behalf of Themselves and all Others Similarly Situated

v.

AVENTIS PASTEUR, INC., Individually and as Successor in Interest to Connaught Laboratories, Inc., Pasteur Merieux and Pasteur Merieux Connaught; Pfizer, Inc., Individually and as a Successor in Interest to Warner–Lambert and Parke–Davis, Inc.; Smithkline Beecham Corp., d/b/a Glaxosmithkline, Merck & Company, Inc., Abbott Laboratories, American Home Products d/b/a Wyeth, Wyeth Laboratories, Wyeth–Ayerst, Wyeth–Ayerst Laboratories, Wyeth Lederle, Wyeth Lederle Vaccines, and Lederle Laboratories; Baxter International, Inc., Individually and as Successor in Interest to North American Vaccine, Inc., Eli Lilly & Company, Inc.; Johnson and Johnson Co., d/b/a Ortho Clinical Diagnostics, Ortho Diagnostic Systems, Inc. and Johnson & Johnson Clincial Diagnostics; American International Chemical; Sigma–Aldrich Corporation; Spectrum Laboratory

Products, Aerchem, Inc.; George UHE Co., Inc., Roger Chemical Co., Inc., Roger Chemical Co., Inc.; Carran Chemicals; Eastman Kodak; EM Industries, Inc., Intercon Chemical Co., and Argenmex SA.

Appeal of: Ashton, Kaplan and Powell.

Superior Court of Pennsylvania.

Argued Dec. 23, 2003.

Argued June 2, 2004.

Lawrence R. Cohan, Philadelphia, and Tobias L. Millrood, Bala Cynwyd, for appellants.

Mark A. Dover, Kansas City, MO, for Eli Lilly, appellee.

Anne Manero, Philadelphia, for Spectrum, appellee.

Kelly A. Grady, Philadelphia and Richard Mark, New York, New York, for American Home, appellee.

Before: DEL SOLE, P.J., MUSMANNO and TAMILIA, JJ.

TAMILIA, J.

¶ 1 This class action suit was initiated by plaintiffs/appellants Charles R. Ashton III and Penny Starr–Ashton, Barbara and Alan Kaplan, and Lynn and Robert Powell, as parents and natural guardians of their minor children, and on behalf of themselves and others similarly situated, to secure damages from the appellees, pharmaceutical companies and their successors-in-interest, for personal injuries allegedly incurred by their children as a result of an injection of a vaccine, preservative and blood product manufactured for use by

appellees.[1] "The plaintiffs [sought] damages and 'medical monitoring' alleging they were poisoned by the presence of the ingredient Thimerosal in childhood vaccinations they received." Trial Court Opinion, Cohen, J., 5/23/03 at 1. On May 23, 2003, the trial court sustained the preliminary objections of the appellees who had argued, *inter alia*, that the court lacked jurisdiction to hear the case. The trial court agreed concluding plaintiffs' cause of action was cognizable under the exclusive jurisdiction of the federal National Childhood Vaccine Injury Act (the "Act"). *Id.* at 11. The court held it lacked jurisdiction to hear the matter as the injured plaintiffs were "qualified" under the Act, and their injuries were "vaccine-related," thereby requiring them to seek relief first in Vaccine Court. *Id.* at 6, 7. On those bases, the court entered its May 22, 2003 Order sustaining appellees' preliminary objections and dismissing appellants' complaint with prejudice.

¶ 2 Appellants now argue the trial court erred (1) by dismissing the complaint on the basis exclusive jurisdiction lies in the Vaccine Court; (2) by denying the minor plaintiffs due process and equal protection by refusing to hear their case in the Court of Common Pleas of Philadelphia County; and (3) by dismissing their complaint for failure to state a cause of action for medical monitoring for which relief could be granted. Appellants' brief at 4.[2] After careful review of the record, we affirm the Order sustaining appellees' preliminary objections and dismissing appellants' complaint with prejudice.

▮ ¶ 3 The National Childhood Vaccine Injury Act of 1986, codified as amended at 42 U.S.C.S. §§ 300aa–1 to 34, is a federal statute originated to provide an administrative remedy, outside the parameters of traditional tort law, for individuals injured by vaccines. *Cheskiewicz v. Aventis Pasteur, Inc., et al.*, 843 A.2d 1258 (Pa.Super.2004).

> This streamlined program establishes standards of proof under which injured claimants benefit from a presumption that a vaccine listed in the Act's Vaccine Injury Table, *see 42 U.S.C. § 300aa–14,* caused their injuries. The Act **requires** that a person with a vaccine related injury file a petition in Vaccine Court, which is a special tribunal of the Federal Court of Claims, before proceeding in either state or federal court. If a premature action has been filed in a state or federal court, that court shall "dismiss the action." A Vaccine Act claim must first be filed within thirty-six months "after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such vaccine related injury."

*Id.* at 1260–1261 (some citations omitted) (emphasis in original). A qualified litigant, that is to say, one who may file a claim, is a petitioner who (1) received one of the vaccines set forth in the Act's table; (2) in the United States; (3) sustained an injury caused by the vaccine; (4) suffered residual effects for more than six months after the date of vaccination; and (5) has not previously received compensation. *Id.* at 1263; 42 U.S.C. § 300aa(11)(c)(1)(A–E).

¶ 4 In appellants' amended class action complaint, the minor plaintiffs are grouped into two distinct categories: those seeking tort damages for personal injuries actually suffered as a consequence of ingesting

---

**1.** The defendants/appellees manufactured certain childhood vaccines, the mercury-based preservative thimerosal, and the blood product RhoGam.

**2.** For the purpose of discussion, we have altered the order of the issues presented in appellants' brief.

thimerosal, and those who have ingested the drug but to date are asymptomatic and are seeking, at appellees' expense, the establishment of "a medical monitoring trust". As set forth in detail in the trial court Opinion, and according to the amended class action complaint, the affected children, Ashton, Kaplan and Powell, allege the following:

> [Madigan Ashton] is described as "diagnosed with an Autism Spectrum disorder (ASD); Pervasive Development Disorder, Not Otherwise Specified (PDD/NOS)." The next class representative plaintiff is Samuel Kaplan, a minor child who "has been diagnosed with an Autism Spectrum Disorder (ASD); Pervasive Developmental Disorder, Not Otherwise Specified (PDD/NOS)." Another plaintiff, Robbie Powell, a minor according to the complaint "has been diagnosed with an Autism Spectrum Disorder (ASD); Pervasive Developmental Disorder, Not Otherwise Specified (PDD/NOS)." And the fourth plaintiff, Lucinda Ashton, is described as having "achieved the neurological, social and developmental milestones anticipated for a child of her age." From pages 12 through 21 the complaint relates in detail the medical histories of each child, including their exposure to the vaccines in question. Each account of each child concludes wit the statement, "In all [child] was poisoned with 237.5 micrograms of toxic mercury form the vaccines containing thimerosal." Overall, then, the Court has before it four plaintiffs, all "poisoned", three with injuries that the complaint alleges, inferentially if not directly, were caused by their thimerosal-containing vaccinations.

Trial Court Opinion, at 6.

¶ 5 Prior to addressing appellants' argument, we must set forth our standard of review when considering an appeal from the grant of preliminary objections.

When we review an appeal from the grant of preliminary objections we examine the allegations of the complaint to determine whether the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. We will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion.

*Cheskiewicz, supra*, at 1262.

¶ 6 Appellants first argue the trial court erred by concluding it lacked jurisdiction to resolve appellants' complaint because exclusive jurisdiction for initiating such claims lies in federal court, specifically the Vaccine Court. Appellants contend the trial court's dismissal of their case is contrary to the plain language and legislative history of the Vaccine Act, in particular the National Vaccine Injury Compensation Program, 42 U.S.C.S. § 300aa–10.

The legislative history and Congress' intent to provide fair and easy compensation for injured children cannot be reconciled with a reading of the Vaccine Act that has the remarkably harsh result of completely depriving children with latent injuries of any legal remedy, in any forum, forever, simply because parents and health care providers were unable to draw the connection between their injuries and the thimerosal-containing vaccines until more than three years form the onset of the first symptoms. It is also impossible to reconcile Congress' legislative intent to compensate vaccine-injured children with a reading of the statute that bars profoundly injured children from pursuing remedies historically available to them in the civil justice system merely because an administrative deadline has

passed, particularly when the nature of the injury evades timely diagnosis.

Appellants' brief at 32.

■■■ ¶ 7 If statutory language is clear, the court's sole function is to enforce its terms, *Lamie v. United States Trustee,* —— U.S. ——, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004), and "only the most extraordinary showing of contrary intentions from the legislative history would justify a limitation on the "plain meaning" of the statutory language, *Garcia v. United States,* 469 U.S. 70, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984). The language of the Act relative to wherein jurisdiction lies is clear: a claimant's exhaustion of the Act's statutory remedy is a condition precedent to subject matter jurisdiction of a state or federal court to resolve the merits of a claim filed by an individual seeking damages for a vaccine-related injury. The statute, in pertinent part, states:

> No person may bring a civil action for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer in a State court or Federal court for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after the effective date of this part, and no such court may award damages in an amount greater than $1,000 in a civil action for damages for such a vaccine-related injury or death, *unless* a petition has been filed, in accordance with section 2116 [42 U.S.C.S. § 300aa–16], for compensation under the Program for such injury or death[.]

42 U.S.C. § 300aa(11), **Petitions for compensation,** (a)(2)(A) (emphasis added). Section 16 of the Act, **Limitations of actions,** further explains the intended interaction between the state court and the Vaccine Court, and states that any action filed in state court seeking damages for a vaccine-related injury or death shall be stayed until the [timely] petition filed in Vaccine Court is resolved. As stated in this Court's very recent Opinion, *Cheskiewicz, supra,*

> [t]he Vaccine Act was enacted to protect the nation's vaccine supply and to create a fair and easily-administered program to provide compensation for vaccine-related injuries. H.R.Rep. No. 99–908, at 5–7 (1986); *reprinted* in 1986 U.S.C.C.A.N. 6634; 6346–48. The statute has a twofold policy: to expedite the award of damages and to protect vaccine manufacturers from burdensome litigation. *Id.* at 4, 1986 U.S.C.C.A.N. at 6344. All individuals injured by a vaccine administered after the date of the enactment of the legislation, if seeking recourse, must do so in the compensation program. *Id.* Thus, the legislative history reinforces the plain meaning construction of the Act that those seeking redress must proceed to the Vaccine Court.

*Cheskiewicz, supra,* at 1263. The trial court Opinion further addresses the issues of the plain reading of the statute and legislative history, supporting its decision to find initial, exclusive jurisdiction for vaccine injury-related claims lies in Vaccine Court:

> Within a few years after birth most American children receive a series of vaccinations. The vaccines administered control the virulent consequences of such childhood diseases as measles, pertussis, rubella, polio, whooping cough, hepatitis, diphtheria and tetanus. These vaccines often contain either a killed bacteria or live but weakened viruses and, hence, can cause serious adverse affects. *See O'Connell v. Shalala,* 79 Fed.3d 170, 172 (1st Cir.1996) (citing *Committee to Review the Adverse Consequences of Pertussis and Rubella Vac-*

*cines, Institute of Medicine, Adverse Affects of Pertussis and Rubella Vaccines* 1 (1991)). In 1996, responding to the possibility of a socio-medical catastrophe that might arise if the victims of the adverse consequences of childhood vaccinations made use of the tort liability system, Congress enacted the National Childhood Vaccine Injury Act of 1996, Pub.L. No. 99–660, 1986 U.S.C.C.N. (100 Stat.) 3755 (Codified as amended at 42 U.S.C. §§ 300aa–1 to 34) (1994). The purpose of the Vaccine Act was to establish a vaccine injury compensation program that would allow claimants to petition to receive compensation for vaccine-related injuries or death. Congress in its wisdom believed that to subject such injuries and deaths to the marketplace of the tort liability system would drive up the prices of vaccines and discourage vaccine manufacturers from remaining in the marketplace as well as leaving many sufferers of vaccine-related injuries uncompensated.

Trial Court Opinion at 2. Rejecting appellants' argument that a plain reading of the statute in question and a review of its legislative history obviate the requirement that a claimant seeking relief for a vaccine-related injury first file a petition for relief in the Vaccine Court, we agree the trial court lacked jurisdiction to address appellants' claims for relief.

¶ 8 Also in response to the trial court's conclusion exclusive jurisdiction for appellants' claims lies within the ambit of the Vaccine Act, appellants argue they are not "qualified claimants" under the Act, and therefore are "exempt from its administrative filing requirement". Appellant's brief at 32. Appellants interpret those sections of the Act pertinent to "qualification" as follows:

claimants whose symptoms occurred more than 36 months ago are prohibited from filing a petition; those prohibited from filing a petition are not qualified to file a petition; and those not qualified to file a petition may proceed directly to state or federal court without going through Vaccine Court. *The Vaccine Act bar on filing a lawsuit directly in state court does not apply to anyone not "qualified" to seek relief in the program.*

Appellants' brief at 34 (emphasis in original).

■ ¶ 9 A review of the complaint indicates that each child in question alleges an "injury" suffered as a consequence of ingesting thimerosal, whether specifically or indirectly. As the trial court reasoned with regard to the children who seek compensation (medical monitoring) for "possible future injuries," "[n]o amount of verbal calisthenics can conceal the fact that plaintiffs do allege injuries, even if they are incubating injuries that may manifest themselves later in time." Trial Court Opinion at 7. We agree, moreover, that the appellants' amended complaint evidences their admitted status as potential qualified claimants under the Act, requesting medical monitoring as a remedy for "further injuries" and "further harm" attributed to the thimerosal contained in the vaccine. *See* Amended Complaint, ¶¶ 210–213. As such, we conclude appellants are "claimants" as anticipated by the Act, and are subject to the mandate of the Act requiring that an initial filing for benefits be made in Vaccine Court. Appellants' challenge to the trial court's finding that jurisdiction lies in Vaccine Court, premised on the basis appellants are not "qualified" claimants, is devoid of merit.

¶ 10 Appellants next argue that prohibiting them from filing in state court, after the 36–month time period within which to file a claim in Vaccine Court has expired, is unconstitutional.

Interpreting the Vaccine Act to completely bar injured minor plaintiffs from pursuing their claims in state court because their administrative remedy has lapsed renders it unconstitutional and in violation of their [rights to] equal protection and due process.

Appellants' brief at 38.

¶ 11 In *Cheskiewicz*, appellants/parents argued, "the statute violates the equal protection clause, infringes on due process rights, and denies the right to a jury trial." *Id.* at 1264. This Court elected not to address the issue.

We have already determined that Parents do not have a right to bring an action in state court until they have exhausted their administrative remedies. Therefore, it would be judicially imprudent at this juncture to discuss the constitutionality of the Vaccine Act.

*Id.* Based on the reasoning set forth by this Court in *Cheskiewicz*, we reject the opportunity to address this challenge to the constitutionality of the administration of the Vaccine Act.

¶ 12 Finally, appellants assert the trial court, "committed reversible error dismissing [their] claim for medical monitoring relief." Appellants' brief at 16. As stated above, appellants seek medical monitoring for children who were injected with one of the potentially hazardous vaccines, but have not yet manifested symptoms of illness or disability.

¶ 13 Initially we note that while a request for medical monitoring is a viable cause of action in Pennsylvania, *see Simmons v. Pacor*, 543 Pa. 664, 674 A.2d 232 (1996),[3] we conclude that as qualified claimants under the Act, appellants seeking relief in the form of medical monitoring are doing so as a result of their exposure to the purported poison included in the vaccine, and therefore must comply mandate of the Act and petition in the Vaccine Court if and when they manifest injuries related to the ingestion of the vaccine, but necessarily within the 36–month mandated time frame. *See Cheskiewicz, supra; see also Nestlen v. Wyeth*, Case Nos. 0201–00126 and 010605780 (Or. Cir.Ct. Mar. 19, 2003). In accordance with the law and the conclusions of this Court, appellants are precluded from seeking relief in the trial court until they exhaust their remedies in the Vaccine Court. We, therefore, will not address the merit of appellants' request for medical monitoring.

¶ 14 Having found the trial court lacked jurisdiction to entertain appellants' claims for relief premised on vaccine-related injuries, and refusing to address appellants' constitutional or medical monitoring arguments, we affirm the May 22, 2003 Order sustaining appellees' preliminary objections and dismissing appellants' complaint with prejudice.

¶ 15 Order affirmed.

---

**3.** In *Simmons v. Pacor*, 543 Pa. 664, 674 A.2d 232 (1996), the Court disallowed recovery for the increased risk and fear of cancer endured by asymptomatic plaintiffs exposed to asbestos-causing cancer, but adopted a rule of law permitting plaintiffs with asbestos-related, asymptomatic pleural thickening to recover for medical monitoring.